**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN DEFENSE OF ANIMALS,               ) | |
|     Plaintiff,    ) | |
| v.                                   ) | Civil Action No. 02-0557 (RWR) |
| THE UNITED STATES DEPARTMENT         ) | |
|   OF AGRICULTURE,          ) | |
|     Defendant,   ) | |
|     and          ) | |
| LIFE SCIENCES RESEARCH, INC.,        ) | |
|     Intervenor-Defendant. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff commenced this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000), seeking access to records concerning an investigation by defendant United States Department of Agriculture (USDA) of Huntingdon Life Sciences (Huntingdon)[1] for alleged violations of the Animal Welfare Act (AWA), 7 U.S.C. §§ 2131-59 (2000).  On December 13, 2002, defendant USDA filed a motion for summary judgment, which was followed by intervenor-defendant's own motion for summary judgment on December 20, 2002.  On February 21, 2003, after

---

[1] Huntingdon Life Sciences is a wholly owned subsidiary of intervenor-defendant Life Sciences Research, Inc.  (See intervenor-defendant's Mem. of P. & A. in Supp. of Unopposed Mot. for Leave to Intervene at 1.)

-2-

receiving two enlargements of time from the Court, plaintiff simultaneously filed a motion for partial summary judgment and opposed defendant USDA's motion.  Defendant USDA opposed plaintiff's motion for partial summary judgment on March 21, 2003.  On March 28, 2003, plaintiff sought an enlargement of the time in which it was to file its reply to defendant USDA's opposition to its motion for partial summary judgment.

Having received some, but not all, of the additional time that it sought, plaintiff has now filed its reply on the merits. <u>See</u> Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. for Partial Summ. J. [hereinafter Pl.'s Reply].  However, plaintiff's reply contains an assertion that directly contradicts an admission that plaintiff previously made to the Court in the enlargement motion that it filed on March 28.  Consequently, defendant USDA respectfully suggests that it is compelled to respond to plaintiff's reply in order to bring this striking inconsistency to the Court's attention.

To justify its March 28 motion seeking a lengthy enlargement of the time in which to file its reply, plaintiff told the Court that it needed that additional time in order to respond to the points raised in the declaration of Michael Caulfield, which defendant USDA submitted in support of its motion for summary judgment.  Plaintiff explicitly characterized Mr. Caulfield's declaration as "detailing the nature of the competitive harm that intervenor[-defendant] contends will result from disclosure of

-3-

the remaining materials." Plaintiff's Motion for Extension of Time to Reply to the Government's and Intervenor's Opposition Briefs and New Declarations [hereinafter Pl.'s Mot.] at 1. Plaintiff pointed to the substance of the declaration, and its need to grapple with it, as the primary reason why it needed a total of fifty-six days to file its reply. See id. at 4-5. Indeed, plaintiff repeated no fewer than six times that its basis for seeking such a lengthy enlargement from the Court was to respond to the points raised in Mr. Caulfield's declaration. See id. at 1, 4, 5. Thus, plaintiff told the Court that it would be "severely prejudiced" if it was not afforded that additional time in which to file its reply. Id. at 5.

After receiving some, but not all, of the additional time that it sought, plaintiff has now filed its reply. That reply, however, offers no meaningful response to the substantive points raised in Mr. Caulfield's "detail[ed]" declaration -- which defendant USDA and the Court were led to believe was plaintiff's basis for seeking an enlargement in the first place. Instead, plaintiff now claims that Mr. Caulfield's declaration is "extremely conclusory," and that it "simply repeats -- over and over again -- the same boilerplate explanations of general competitive harm." Pl.'s Reply at 13. Plaintiff actually goes so far as to suggest that the declaration is of so little substance as to "make[] a complete mockery of . . . the adversarial process." Id.

-4-

Surely, plaintiff cannot have it both ways.  Having asked for, and received, an enlargement in order to address the points raised in Mr. Caulfield's declaration, which plaintiff at <u>that</u> time characterized as "detailing the nature of the competitive harm" in this case,[2] plaintiff cannot now credibly claim that that very same declaration is "extremely conclusory."  This blatant inconsistency, at a minimum, warrants special attention.[3]

---

[2] Plaintiff certainly cannot claim that defendant USDA has suddenly overstated plaintiff's original position concerning the sufficiency of Mr. Caulfield's declaration.  Indeed, in its opposition to plaintiff's enlargement motion, defendant USDA even drew attention to the way in which plaintiff characterized Mr. Caulfield's declaration at that time. <u>See</u> Def.'s Opp'n to "Plaintiff's Motion for Extension of Time to Reply to the Government's and Intervenor's Opposition Briefs and New Declarations," at 7 n.7 ("It is noteworthy that plaintiff, in justifying its request for additional time, readily concedes that Mr. Caulfield's declaration 'detail[s] the nature of the competitive harm that intervenor[-defendant] contends will result from disclosure of the remaining materials' . . . . In light of such an admission, it would be quite puzzling indeed for plaintiff to argue in its reply brief that Mr. Caulfield's declaration is not sufficiently detailed for it or the Court to determine if the release of the Exemption 4 information remaining at issue in this case would cause substantial competitive harm.")  If plaintiff had any concerns about defendant USDA's stated understanding of plaintiff's characterization of Mr. Caulfield's declaration, it could have raised those concerns in the reply memorandum that it subsequently filed in support of its enlargement motion.  <u>See</u> plaintiff's Reply to the Federal Defendant's Opposition to Plaintiff's Motion for Extension of Time at 1.  Yet it did not, choosing instead to press for an enlargement at that time.

[3] By contrast, this episode is quite unlike how plaintiff has characterized defendant USDA's recent supplemental release of three pages that were previously withheld in full or in part.  Indeed, plaintiff goes so far as to assert that this supplemental release "calls into serious question the veracity of Mr. Gilmore's descriptions with respect to all of the <u>remaining</u>
(continued...)

-5-

                    Respectfully submitted,

                    ROSCOE C. HOWARD, JR.
                    (D.C. Bar #246470)
                    United States Attorney


                    MARK E. NAGLE
                    (D.C. Bar #416364)
                    Assistant United States
                      Attorney


Dated:  May 12, 2003          FRANK P. MENNA
                    Senior Attorney
                    Office of Information and
                      Privacy
                    United States Department of
                      Justice
                    Flag Building, Suite 570
                    Washington, DC  20530-0001
                    (202) 514-3642

---

[3](...continued)
documents at issue."  Pl.'s Reply at 21.  In making this extreme argument, plaintiff yet again has ignored another longstanding tenet of FOIA jurisprudence in this Circuit.  The Court Appeals for the District of Columbia Circuit "emphatically reject[ed]" this very same argument over twenty years ago.  Military Audit Project v. Casey, 656 F.2d 724, 754 (D.C. Cir. 1981) ("emphatically reject[ing]" requester's argument that a supplemental release of previously withheld information makes an agency's affidavits "suspect," because it "would work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld"; would "punish flexibility"; and would "provide the motivation for [agency] intransigence"); see also, e.g., Western Ctr. for Journalism v. IRS, 116 F. Supp. 2d 1, 10 (D.D.C. 2000) ("[W]hat is expected of a law abiding agency is that the agency admit and correct error when error is revealed.").