**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____ )
                                  )
IN DEFENSE OF ANIMALS,            )
                                  )
        Plaintiff,                )
                                  )
    v.                            )        Civil Action No. 02-0557 (RWR)
                                  )
UNITED STATES DEPARTMENT          )
OF AGRICULTURE, et al.,           )
                                  )
        Defendants.               )
_____ )


                  MEMORANDUM OPINION AND ORDER

        Plaintiff In Defense of Animals ("IDA") filed a complaint

seeking disclosure of records that it had requested under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq.,

from defendant United States Department of Agriculture ("USDA").

Life Sciences Research ("LSR") intervened as a defendant and both

defendants moved for summary judgment asserting that the USDA had

fulfilled its duty under FOIA by providing to plaintiff some

documents and protecting from disclosure other documents based on

four FOIA exemptions.  Defendants also claimed that the USDA had

conducted an adequate search for responsive documents.  Plaintiff

cross-moved for summary judgment, arguing that the defendants had

failed to prove that the documents were exempt under two of the

claimed provisions of FOIA and that the USDA had not proved that

it had adequately searched for all responsive records.  As a

result of defendants' alleged failure to meet its burdens of

proof, plaintiff sought to have the documents disclosed.

Defendants opposed.  Because the defendants have proved that an

adequate search had been conducted in response to plaintiff's

FOIA request, defendants' motion for summary judgment will be

granted in part and plaintiff's cross-motion for summary judgment

will be denied in part.  However, because defendants have failed

to provide an adequate <u>Vaughn</u> index, and because the record

provides insufficient evidence upon which the court may review

the merits of the putative exemptions and entertain a

segregability analysis, defendants' motion for summary judgment

will be denied without prejudice as to the applicability of the

exemptions.  Plaintiff's cross-motion for summary judgment on the

ground that the claimed exemptions are inapplicable will be

denied without prejudice.

<u>BACKGROUND</u>

Under FOIA, IDA requested by letter on November 20, 2000

access to records concerning the USDA's investigation, for

possible violations of the Animal Welfare Act, 7 U.S.C. §§ 2131-

2159, of Huntingdon Life Sciences, a subsidiary of intervenor-

defendant LSR and a research facility licensed to conduct animal

experiments for industrial chemicals and pharmaceutical products.

(Def.'s Stmt. of Material Facts as to Which There is No Genuine

Issue ("Def.'s Stmt.") at ¶ 1; Pl.'s Resp. to Def.'s Stmt. and

- 3 -

Pl.'s Stmt. of Material Facts as to Which There is No Genuine Issue ("Pl.'s Stmt.") at ¶ 6.)  The USDA responded on April 13, 2001, by disclosing 31 pages comprised of a report on violation against Huntingdon, a complaint filed against Huntington, and a Consent Decision and Order terminating the USDA's investigation of Huntingdon, and by informing plaintiff that other responsive documents would be placed into the USDA's FOIA processing queue. (Def.'s Stmt. at ¶ 2; Pl.'s Stmt. at ¶ 7.)  Eleven months later, after having received no supplemental documents from the USDA, plaintiff filed suit in this court to compel the USDA to disclose any additional responsive documents.  (Pl.'s Stmt. at ¶ 8; Def.'s Mot. for Summ. J. at Ex. B (Decl. of Hugh Gilmore ("Gilmore Decl.")) at ¶ 10.)  LSR intervened as a defendant.

In June 2002, the USDA disclosed to plaintiff 228 pages in full, 146[1] redacted pages under Exemption 7(C) of FOIA, and 1 page redacted under Exemption 5, and withheld 19 pages under Exemption 5.  (Pl.'s Stmt. at ¶ 10; Gilmore Decl. at ¶ 11.)  The

---

[1]     The USDA's statement of material facts reports this number as 148 (see Def.'s Stmt. at ¶ 3), but the Gilmore Declaration cited to support this assertion reflects that this number is 146.  In any event, plaintiff does not contest defendant's nondisclosures or redactions under Exemption 7(C). (See Pl.'s Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. and in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") at 10.)

- 4 -

USDA informed plaintiff that an additional 2384[2] pages were being

sent to Huntingdon as part of its predisclosure notification

procedure to determine whether any of the documents were exempt

from disclosure under Exemption 4.  (Def.'s Stmt. at ¶ 3; Pl.'s

Stmt. at 10.)  Two months later, upon completion of the

notification process, defendant released an additional 303 pages

in full and 602 pages with redactions justified under Exemptions

4, 6, and 7(C), and withheld 1563 pages in full under the same

exemptions.[3]  (Pl.'s Stmt. at ¶ 11; Gilmore Decl. at ¶ 12.)

In correspondence exchanged between IDA and the USDA, the

categories of documents at issue were narrowed.  Through a letter

to plaintiff on November 27, 2002, the USDA provided to IDA a

description, by number of pages and by category, of the documents

remaining in dispute:  1) test protocols and protocol amendments

(467 pages withheld under Exemption 4); 2) animal tracking and

assessment records (20 pages redacted, 8 withheld under Exemption

4); 3) final test reports and related records (125 pages withheld

_____

[2]    The number of pages sent to Huntingdon and accounted
for in the defendant's next correspondence with plaintiff totaled
2468 pages.  (See Def.'s Stmt. at n.2; Pl.'s Stmt. at ¶ 11.)

[3]    Defendant's statement of material facts states that the
USDA also invoked Exemption 5, which is inconsistent with its
supporting Gilmore declaration.  It is apparent from a copy of
the letter sent by the defendant to plaintiff that the USDA
invoked only Exemptions 4, 6, and 7(C).  (Compare Def.'s Stmt. at
¶ 4 with Pl.'s Stmt. at ¶ 11; Gilmore Decl. at ¶ 12; Pl.'s Mem.
at Ex. R (letter from USDA to IDA).)

under Exemption 4); 4) interim test reports (22 pages withheld

under Exemption 4); 5) dosing charts (58 pages withheld under

Exemption 4); 6) clinical observation raw data reports (121 pages

withheld under Exemption 4); 7) necropsy and postmortem

examination reports (23 pages withheld under Exemption 4);

8) viability records (397 redacted pages, 67 pages withheld under

Exemption 4); 9) veterinary treatment requests and logs (20

redacted pages, 94 pages withheld under Exemption 4); 10)

internal Huntingdon memoranda (7 redacted pages; 33 pages

withheld under Exemption 4); 11) Institutional Animal Care and

Use Committee ("IACUC") records (2 redacted pages, 54 pages

withheld under Exemption 4); 12) internal USDA investigatory

memoranda (27 redacted pages under Exemption 4);

13) communications between Huntingdon and USDA (27 redacted pages

under Exemption 4); 14) communications between Huntingdon and its

clients (1 redacted page, 12 pages withheld under Exemption 4);

15) internal USDA memoranda regarding drafts of the complaint

filed against Huntingdon (1 redacted page, 19 pages withheld

under Exemption 5); and 16) miscellaneous records (10 redacted

pages under Exemption 4). (Pl.'s Mem. at Ex. T (letter from USDA

to IDA of Nov. 27, 2002).) The letter also indicated that the

USDA understood IDA not to contest 466 pages of Huntingdon's

standard operating procedures withheld under Exemption 4, 50

pages of animal husbandry records redacted under Exemption 4; and 146 pages redacted and 17 pages withheld under Exemptions 6 and 7(C).  (Id.)  Plaintiff responded by stating that it no longer sought disclosure of documents contained in categories 1, 2, and 5, and agreed that the USDA correctly understood the uncontested matters, though IDA did seek clarification regarding the 17 pages withheld under Exemptions 6 and 7(C).  (Id. at Ex. U (letter from IDA to USDA (Dec. 12, 2002).)  In addition, plaintiff stated that it would not seek any information identifying Huntingdon's clients or the products and compounds that were the subject of Huntingdon's research projects.

     The USDA moved for summary judgment asserting that it had complied fully with the mandates of FOIA, a motion which LSR joined.  Specifically, defendants argued that the USDA had conducted an adequate search for responsive documents and that the contested records were protected from disclosure as "trade secrets and commercial or financial information obtained from a person and privileged or confidential" under FOIA Exemption 4, or as "inter-agency or intra-agency memorandums" under Exemption 5.  Plaintiff cross-moved for summary judgment, arguing that defendants had not met their burden to prove that the exemptions were applicable to the records and that the USDA had failed to account adequately for responsive documents which the IDA knew to

be or to have been in the USDA's possession.  Plaintiff asserted

that defendants' proffer of a single declaration from Hugh

Gilmore, an employee of the USDA FOIA division, was inadequate as

a matter of law because Gilmore could not establish with personal

knowledge that Huntingdon would suffer competitive harm as

required under Exemption 4.  Plaintiff contended that defendants'

justification was lacking under Exemption 5 because defendants

failed to prove the applicability of both the deliberative

process and attorney work product privileges.  Plaintiff also

challenged defendants' complete withholding of documents under

both exemptions as violative of the segregation provision of FOIA

which requires agencies to redact and disclose portions of

segregable documents.  In addition, IDA challenged the

sufficiency of defendants' <u>Vaughn</u> index and requested that the

court require defendants to disclose records withheld under

Exemption 4, to submit a <u>Vaughn</u> index to judge the propriety of

the other claimed exemptions, and to permit plaintiff to conduct

discovery regarding the adequacy of the USDA's search.

The USDA replied with a second declaration from Hugh

Gilmore, the declaration of USDA Investigator Francis Keyser to

establish the adequacy of the search, and the declaration of the

General Manager of Huntingdon, Michael Caulfield, to address

plaintiff's claimed insufficiency of proof with respect to

- 8 -

Exemption 4.  The USDA argued that it had established the
applicability of Exemptions 4 and 5, it had conducted an adequate
search, and, the absence of a formal <u>Vaughn</u> index
notwithstanding, its declarations sufficiently had served as a
<u>Vaughn</u> index from which the plaintiff and the court could review
its claims for exemptions.  LSR filed its own opposition to
plaintiff's cross-motion, supplementing argument on the
applicability of Exemption 4 and asserting that substantial
commercial harm would befall Huntingdon and its clients if the
documents were disclosed.

## DISCUSSION

Summary judgment may be granted when there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts
are those "that might affect the outcome of the suit under the
governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986).  In an action brought under FOIA, "agency decisions
to withhold or disclose information under FOIA are reviewed <u>de
novo</u> by this court."  <u>Judicial Watch, Inc. v. United States
Postal Service</u>, 297 F. Supp. 2d 252, 256 (D.D.C. 2004) (citing
<u>Mead Data Cent., Inc. v. U.S. Dep't of Air Force</u>, 566 F.2d 242,
251 (D.C. Cir. 1977)) ("<u>Judicial Watch (USPS)</u>"); <u>see</u> 5 U.S.C.
§ 552(a)(4)(B) (requiring the court to determine the propriety of

an agency's withholdings <u>de novo</u>).  The agency shoulders the
burden of justifying its withholdings under FOIA, 5 U.S.C.
§ 552(a)(4)(B), which it may "meet . . . by submitting affidavits
or declarations that describe the withheld material in reasonable
detail and explain why it falls within the claimed FOIA
exemptions." <u>Judicial Watch (USPS)</u>, 297 F. Supp. 2d at 256.  An
agency is not entitled to summary judgment, however, if it
provides merely conclusory, vague or sweeping affidavits and
declarations which do no more than "recit[e] statutory
standards." <u>Id.</u> (quoting <u>King v. U.S. Dep't of Justice</u>, 830 F.2d
210, 219 (D.C. Cir. 1987)); <u>see</u> <u>Gallant v. Nat'l Labor Relations
Bd.</u>, 26 F.3d 168, 171 (D.C. Cir. 1994) ("Summary judgment may be
granted on the basis of agency affidavits if they contain
reasonable specificity of detail . . . and if they are not called
into question by contradictory evidence in the record or by
evidence of agency bad faith.")

FOIA requires each federal agency to make available for
public perusal government records unless the requested documents
fall under one of nine categories of exemptions.  5 U.S.C.
§§ 552(a), (b).  An agency must respond to a FOIA request with a
search "reasonably calculated to uncover all relevant documents,"
<u>Campaign for Responsible Transplantation v. United States FDA</u>,
219 F. Supp. 2d 106, 110 (D.D.C. 2002) (quoting <u>Weisberg v.</u>

- 10 -

United States Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir.
1983)), and by providing a means, commonly called a Vaughn index,
for the requesting party and a court to determine the reasons for
-- and propriety of -- withholding specific records under
putative exemptions.  Vaughn v. Rosen, 484 F.2d 820, 827 (D.C.
Cir. 1973).  A party requesting documents may bring a disclosure
action under FOIA if he can show "that an agency has
(1) improperly; (2) withheld; (3) agency records." Kissinger v.
Reporters Comm., 445 U.S. 136, 150 (1980) (citing 5 U.S.C.
§ 552(a)(4)(B)).

I.   ADEQUACY OF SEARCH

     To fulfill its responsibility under FOIA, an agency must
show that "it made a good faith effort to conduct a search for
the requested records using methods which can be reasonably
expected to produce the information requested." Oglesby v.
United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir.
1990); see also Campaign for Responsible Transplantation, 219 F.
Supp. 2d at 110.  The adequacy of a search is "a matter dependent
on the circumstances of the case." Id. (quoting Founding Church
of Scientology v. NSA, 610 F.2d 824, 834 (D.C. Cir. 1979)).  FOIA
does not require an agency to uncover all responsive documents
that may exist, see Weisberg v. United States Dep't of Justice,
745 F.2d 1476, 1485 (D.C. Cir. 1984), or to search exhaustively

- 11 -

every record system or achieve a perfect search.  See Campaign for Responsible Transplantation, 219 F. Supp. 2d at 110 (citing SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).  Instead, the search is measured against a standard of reasonableness and good faith, and a search is not rendered unreasonable by the failure to produce all responsive material. See Meeropol v. Meese, 790 F.2d 942, 952-953 (D.C. Cir. 1986); see also Oglesby, 920 F.2d at 68 (noting, however, that an "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested").

To that end, an agency must provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched . . . [in order] to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate . . . ." Oglesby, 920 F.2d at 68.  An agency enjoys the presumption that its affidavits are made in good faith, though a plaintiff may rebut the presumption with evidence of bad faith.  See Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981).  A plaintiff may not rely, however, on "purely speculative claims about the existence

- 12 -

and discoverability of other documents" to rebut the presumption

of good faith.  Id.

    Although plaintiff here offers three grounds for denying

defendants' motion for summary judgment as to the adequacy of the

USDA's search, not one -- in isolation or in conjunction with the

other grounds -- creates an issue of material fact with which to

question the reasonableness of the agency's efforts.  Once the

USDA received plaintiff's FOIA request, the USDA sent a copy of

the letter and instructions for conducting the search to three

components of the USDA:  the Animal Care Unit ("ACU"), the

Investigative Enforcement Services ("IES"), and the Office of

General Counsel ("OGC").  (Gilmore Decl. at ¶ 26; 2d Decl. of

Hugh Gilmore ("2d Gilmore Decl.") at ¶ 3.[4])  At the ACU, the

search covered the headquarters staff (where an electronic search

using the search term "Huntingdon" yielded responsive records);

the deputy administrator's office (where a manual search of the

_____

    [4]    Plaintiff argues that the court should not take the
defendants' supplemental declarations submitted in opposition to
plaintiff's motion for summary judgment into consideration
because "it would be patently unfair." (Pl.'s Mem. at 22 n.7.)
However, plaintiff does not suggest in its reply that the facts
set forth in those affidavits are false or submitted in bad
faith, and no prejudice to plaintiff is apparent from
consideration of the declarations.  Thus, the declarations will
be considered.  See, e.g., Campaign for Responsible
Transplantation, 219 F. Supp. 2d at 111 n.5 (noting that the
court considered supplementary declarations to adjudge the
adequacy of a FOIA search).

- 13 -

files produced a responsive document); and the ACU regional
office (where an electronic search using the Licensing and
Registration Information System inputting the name "Huntingdon"
and its registration number, 22-R-040, yielded a responsive
document).  (Gilmore Decl. at ¶ 26(A); 2d Gilmore Decl. at ¶¶ 12-
17.)

    An electronic search of IES headquarters produced a
responsive file using the search term Huntingdon.  (Gilmore Decl.
at ¶ 26(B)(1).)  Although a search at an IES regional office for
a closed investigation, as in the case of Huntingdon, was not
typically conducted because all documents related to a closed
investigation are forwarded to IES headquarters (id. at
¶ 26(B)(2)), here the USDA conducted a search of the regional
office.  (Id.; 2d Gilmore Decl. at ¶ 9.)  In addition, an
investigator working on the Huntingdon matter, Francis Keyser,
was asked about the possible location of other responsive
documents.  (Id.; Def.'s Opp'n to Pl.'s Mot. at Ex. A (Decl. of
Francis Keyser ("Keyser Decl.").)  Neither of those efforts
yielded any additional responsive records.  (Gilmore Decl. at
¶ 26(B)(2).)

    Although the OGC would not typically have records after 35
days from the date an investigation is closed -- because the OGC
forwards those documents to the IES -- a search of the OGC was

- 14 -

conducted by defendants here.  (2d Gilmore Decl. at ¶¶ 18-19.)  A

manual search of the individual staff files and division files,

as well as an electronic search, did not yield any responsive

documents.  (Id. at ¶¶ 20-21.)

The declarations describing the searches conducted at the

ACU, IES, and OGC components of the USDA more than adequately

fulfill the requirement for a "reasonably detailed affidavit"

needed to prove the adequacy of the USDA's search.  The search

produced a volume of over 2800 responsive pages, and the

declarations set forth the particular search methods used and

specific locations at which the searches were conducted.

Plaintiff does not dispute that the searches described were

conducted nor does it contest that the methods delineated were

indeed implemented by the USDA.  Instead, plaintiff argues as

evidence of insufficient search that 1) the USDA had once been in

possession of a responsive video, affidavits and photographs that

were inexplicably not disclosed; 2) no search was conducted at

the home of the primary investigator assigned to the Huntingdon

complaint; and 3) the USDA's avowal that electronic searches

conducted using the term "Huntingdon," does not, without more,

establish that other terms would not yield responsive results.

(Pl.'s Mem. at 40-42.)

- 15 -

Plaintiff's first claim, that a video, affidavits and photographs once purportedly in the USDA's possession were not disclosed, does not diminish the reasonableness of the USDA's search, for an agency is not required to uncover all responsive documents that may exist.  See Weisberg, 745 F.2d at 1485; Goland v. CIA, 607 F.2d 339, 353 (D.C. Cir. 1978) (noting that the court was not required to draw the inference that a document previously in the agency's possession was still in the agency's possession at the time of a FOIA request); cf. Campaign for Responsible Transplantation, 219 F. Supp. 2d at 111 ("In light of the voluminous number of documents relevant to this FOIA request, the addition of 55 documents is a proverbial 'drop in the bucket.'").  In any event, defendants provided in their declarations that those missing records were not at the OGC, not found in "an extensive search" conducted by Hugh Gilmore that focused on those records, not discovered at the IES headquarters, and not found by IES Eastern Regional Director John Kinsella, IES Headquarters Director Alan Christian, or by IES Assistant Director Teresa Lorenzano.  (2d Gilmore Decl. at ¶¶ 21-23, 25-27.)  That the USDA failed to locate documents specifically requested by plaintiff, without more, does not rebut the presumption of the agency's reasonable good faith efforts to locate responsive documents or the particular records in question.

- 16 -

Similarly, USDA's failure to search the home of a former primary investigator, Ron Carter, does not create doubt as to the adequacy of the search.  The USDA contacted Carter's assistant in the Huntingdon investigation, Francis Keyser, to determine if any responsive documents were outstanding.  Keyser, while vaguely recalling that Carter may have possessed the requested video, photographs and affidavits, stated that he was unaware of the location now and that it was possible that Carter himself had "turned over all of his files to the [IES] regional office." (Keyser Decl. at ¶¶ 11-14, 21.)  The Regional Office, however, did not have any records from Mr. Carter.  (Id. at ¶ 21.)  It is undisputed that Ron Carter, however, is no longer employed by the USDA.  (2d Gilmore Decl. at ¶ 24.)  FOIA does not require agencies to contact former employees to determine if they are in possession of responsive documents to render a search "reasonable."  See, e.g., Blanton v. United States Dep't of Justice, 182 F. Supp. 2d 81, 85 (D.D.C. 2002).

Finally, the USDA adequately addressed why the search terms it used were reasonably calculated to uncover all relevant documents.  (See 2d Gilmore Decl. at ¶¶ 8 (noting that the IES database is indexed by the name of the regulated facility and that a search of other terms would be impossible); 16 (indicating that the ACU search on the Licensing and Registration Information

System requires use of the subject's name and registration number).)  To require what plaintiff requests would transform the reasonableness standard into one already rejected by this Circuit requiring "meticulous documentation [of] the details of an epic search for the requested records." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." Id.  Defendants have met their burden to prove that their document retrieval efforts were adequate and will be awarded summary judgment with respect to the adequacy of the USDA's search.  Conversely, plaintiff's cross-motion for summary judgment on the adequacy of the USDA's search and its request for discovery will be denied.

II.  ADEQUACY OF THE VAUGHN INDEX

In addition to proving the adequacy of a search, an agency in a disclosure action under FOIA must provide a means for a requester and court to review why -- and whether -- a document or portion of a document is ostensibly exempt.  To that end, an agency typically produces a "Vaughn index" which describes with specificity the documents withheld or redacted and the proffered justification for non-disclosure. Vaughn, 484 F.2d at 827.  At

- 18 -

the least, the agency must provide an examining court with

sufficient detail to permit de novo review of the agency's

explanations.  See Judicial Watch (USPS), 297 F. Supp. 2d at 257

(citing Oglesby, 79 F.3d at 1176); King v. United States Dep't of

Justice, 830 F.2d 210, 224 (D.C. Cir. 1987) (finding unacceptable

an index with a "[c]ategorical description of redacted material

coupled with categorical indication of anticipated consequences

of disclosure").  Whether those details are set forth in a formal

index, series of declarations, or through oral testimony is

unimportant because the "court's primary focus must be on the

substance, rather than the form, of the information supplied by

the government to justify withholding the requested information."

Gallant v. NLRB, 26 F.3d at 168, 172 (D.C. Cir. 1994) (internal

citations omitted).[5]

---

[5]     Although this Circuit previously stated that a
satisfactory Vaughn index must contain three "indispensable
elements," one of which requires that "[t]he index . . . be
contained in one document, complete in itself," strict conformity
with the one-document rule has been relaxed without comment.
Compare Founding Church of Scientology v. Bell, 603 F.2d 945, 949
(D.C. Cir. 1979) (per curiam) (requiring that a Vaughn index be
self-contained in one document) with Gallant, 26 F.3d at 172-73
(allowing multiple affidavits to satisfy the Vaughn index
requirement); Armstrong v. Exec. Office of the Pres., 897 F.
Supp. 10, 17 (D.D.C. 1995) (noting that a requirement that an
agency resubmit supplemental Vaughn justifications in one
document would require "the empty exercise of parroting prior
Vaughn indices").  In light of the court's duty to consider the
substance, and not form, of the index, formal compliance with the
one-document rule seems unnecessary.

- 19 -

Although an agency need not, in every case, provide a
meticulously crafted index justifying its withholdings document-
by-document or page-by-page, Crooker v. Bureau of ATF, 789 F.2d
64, 67 (D.C. Cir. 1986) (sanctioning use of indexes explaining
exemptions by category of document but cautioning that it must
still be "sufficiently distinct to allow a court" to review the
explanation), its index must permit the court also to conduct a
"segregability analysis."  Because agencies are required under
FOIA to disclose "[a]ny reasonably segregable portion of a record
. . . after deletion of the portions which are exempt[,]" 5
U.S.C. § 552(b), they must furnish the court with an index that
explains why a document wholly undisclosed is not reasonably
segregable.  Consequently, under this Circuit's interpretation of
"reasonably segregable" -- requiring analysis of post-segregation
intelligibility and the extent of the burden of editing or
segregating the document at issue -- a system of itemizing and
indexing exemptions with subdivided portions of a document is
common.  See Yeager v. DEA, 678 F.2d 315, 322 n.16 (D.C. Cir.
1982) (defining "reasonably segregable"); see also Vaughn, 484
F.2d at 827 (describing "an indexing system [which] would
subdivide the document . . . into manageable parts cross-
referenced to the relevant portion of the Government's
justification" to show "whether a particular portion is" exempt);

Judicial Watch (USPS), 297 F. Supp. 2d at 257 (noting that "as a

purely practical matter" a document-by-document index is required

to assess segregability).  A detailed index is necessary

particularly given this court's "affirmative duty to consider the

segregability issue sua sponte."  Trans-Pacific Policing Agmt. v.

United States Customs Serv., 177 F.3d 1022, 1028 (D.C. Cir.

1999).

Here, because plaintiff has withdrawn its request for

Standard Operating Procedures (466 pages), animal husbandry

records (50 pages), test protocols and protocol amendments (467

pages), animal tracking and assessment records (28 pages), and

dosing charts (58 pages), as well as any information identifying

Huntingdon clients and drugs or compounds subject to Huntingdon's

research projects, the adequacy of the Vaughn index will be

examined with respect to 1075 pages withheld either in full or in

part in the contested categories under FOIA Exemptions 4 or 5.[6]

---

[6]     Remaining are 14 categories of documents, 13 of which
are wholly in dispute, and one, the records withheld pursuant to
Exemptions 6 and 7(C), which is contested with respect to the 17
pages withheld in full.  Defendants state that only 1008 pages
are in dispute, a discrepancy that may have been avoided with an
itemized Vaughn index.  (Defendants previously stated that 1012
pages were in dispute (Def.'s Opp'n to Pl.'s Mot. for Partial
Summ. J. at 3), but that was before they disclosed 4 pages of
documents following the plaintiff's motion for summary judgment,
see infra note 10.)  However, defendants did not account for 27
pages for communications between Huntingdon and the USDA, 13
pages of communication between Huntingdon and its clients, 10
miscellaneous records, and 17 pages which plaintiff contests

(See Pl.'s Mem. at 23 (withdrawing requests).)  Defendants'

Vaughn index is comprised of the declarations of Hugh Gilmore and

Michael Caulfield.  Both declarations outline categories of

materials and the number of pages included in each category and

the purported exemption applicable to it.[7]  Even at first blush,

the indices are inadequate because they provide little more than

a summary attestation of the type of information included within

each category of information with a "categorical indication of

anticipated consequences of disclosure."  King, 830 F.2d at 224.[8]

In addition, though the declarants aver within each category that

"they contain no reasonably segregable nonexempt information" and

summarize why that may be so, the indices were not created with

sufficient detail to permit judicial review of those

conclusions.[9]  Examining the bases for the claimed exemptions

_____

under Exemption 7(C).

[7]     The categories are the same as those outlined by the
USDA to the IDA by letter dated November 27, 2002, as is
described in the Background section of this Memorandum Opinion
and Order, supra.

[8]     At this juncture, how many documents are at issue is
unclear.  While the number of pages within an exemption category
is clear, there exists no indication of whether single or
multiple documents are at issue, a distinction that may be useful
in conducting the segregability analysis.

[9]     The description of the categories range from the very
broad to more specific.  (Compare Gilmore Decl. at ¶ 16(c)
("Necropsy and Postmortem Examination Reports (23 pages withheld
in full):  These records consist of observations that were taken
through necropsy or postmortem examinations of the test subjects,

- 22 -

further illustrates why the indices are inadequate to enable this

court to conduct a meaningful review of the agency's decisions.

A.   Exemption 5

The general disclosure requirement under FOIA does not apply

to "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in

_____

and describe the physiological and health effects of proprietary
experimental compounds tested on them.  They contain no
reasonably segregable nonexempt information.") with Gilmore Decl.
at ¶ 15(D):
>     (Final Test Reports and Related Records (125 pages
>     withheld in full).  Portions of these records contain
>     detailed descriptions of the designs and methods used
>     in Huntingdon's laboratory studies, and essentially
>     recapitulate much of the information contained in the
>     testing protocols described above.  Such information
>     includes:  the objectives and procedures stated in the
>     testing protocol; a description of the experimental
>     proprietary compound tested; a description of the
>     testing methods used; and a description of the dosage,
>     dosing regimen, and route of administration.  These
>     records were withheld in full because, in addition to
>     containing information about the confidential test
>     protocols described above, they contain
>     characterizations of the physiological and health
>     effects of proprietary experimental compounds tested by
>     Huntingdon which, as discussed below, are also exempt
>     from disclosure,  Thus, they contain no reasonably
>     segregable nonexempt information.")

The declaration then describes how the categories of information
fall under Exemption 4 or 5.  Although defendants note that an
agency may take the "clear and more efficient course of setting
forth only once the reason that the release of a particular type
of information would be harmful," the index in the case on which
they rely was far more detailed in that it "set forth a list of
different forms that contain each type of information, and the
Bates numbers for the individual documents from which such
information was redacted." Judicial Watch, Inc. v. Export-Import
Bank, 108 F. Supp. 2d 19, 37 (D.D.C. 2000).

litigation with the agency[.]"  5 U.S.C. § 552(b)(5) ("Exemption

5").  Exemption 5 protects documents which are ordinarily

privileged in civil litigation discovery, which include documents

that implicate the deliberative process and the attorney work

product privileges.  <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132,

147 (1975).  Defendants have invoked both those privileges to

withhold 16 pages[10] in full in its category of "Internal USDA

Memoranda Concerning the Drafting of the AWA Complaint Against

Huntingdon."  (Gilmore Decl. at ¶ 21-23.)

      1.   Deliberative Process Privilege

The deliberative process privilege requires that the exempt

document be both predecisional and deliberative.  <u>Jordan v. Dep't

of Justice</u>, 591 F.2d 753, 774 (D.C. Cir. 1978).  A predecisional

document for FOIA purposes is one that is "antecedent to adoption

of agency policy," <u>id.</u>, and connected to a specified decision-

making process.  <u>See</u> <u>Judicial Watch (USPS)</u>, 297 F. Supp. 2d at

259.  To be a deliberative document, it must "make[]

recommendations or express[] opinions on legal or policy matters"

in the "give-and-take of the consultative process." <u>Id.</u>

(internal citations omitted); <u>Sears, Roebuck & Co.</u>, 421 U.S. at

---

[10]    Plaintiff had sought 20 pages under Exemption 5.
However, after plaintiff moved for summary judgment, defendants
disclosed 4 pages of documents that had been withheld.  (Pl.'s
Reply to Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J. at 19-
20.)

150 (noting that Exemption 5 is intended to protect "frank discussion of legal or policy matters in writing [which] might be inhibited if the discussion were made public") (internal citations omitted).  Because the privilege protects an agency's opinions or policies, facts are not ordinarily protected, Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977), although factual summaries which were compiled with an interpretative or analytical lens are exempt if they "unveil the agency's reasoning by showing what it considered relevant (and irrelevant)."  Judicial Watch (USPS), 297 F. Supp. 2d at 262 (quoting Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1438 (D.C. Cir. 1992)).

The 16 pages at issue here, defendants contend, "contain deliberations among [USDA] investigators and Office of General Counsel (OGC) about what charges should be included in the AWA Complaint that was ultimately filed against Huntingdon." (Gilmore Decl. at ¶ 21.)  The documents contain "recommendations that certain charges be filed in that complaint, evaluations and opinions of the evidentiary and legal support for those proposed charges, and draft language for charges that were considered for inclusion in the complaint."  (Id. at ¶ 22.)  That the information precedes the USDA's decision to file a complaint against Huntingdon seems clear, and defendants have adequately

- 25 -

linked the document (or documents) to a specific decisionmaking
process.

However, defendants fail to provide sufficient information
for the court to determine that the documents were wholly
deliberative.  While admitting that the documents at issue
contained "discussion of facts uncovered during the investigation
of Huntingdon," they offer nothing more than that "revealing the
pertinent facts on which the evaluations and opinions of the
proposed charges were based" would expose USDA's deliberative
process.  (Id. at ¶ 23.)  Defendants do not contend, for
instance, that only the pertinent facts are set forth in the
memoranda by clearly showing which facts were relevant or
irrelevant, nor do they demonstrate that the facts are written
through an investigational lens.[11]  It may be that the facts are
"inextricably connected to the deliberative material" (id.), but
the proffered Vaughn indices are inadequate to establish the
predicate facts for de novo review.

_____

    [11]    The USDA argues in its opposition to plaintiff's motion
for summary judgment that Gilmore did attest that "only 'the
pertinent facts'" were included in the documents.  The Gilmore
declaration does not support that reading as Gilmore did not once
state that "only" some facts were reported.  (Def.'s Opp'n to
Pl.'s Mot. for Summ. J. at 31.)

2.   Attorney Work Product

Defendants also assert that the same 16 pages are protected from disclosure as attorney work product.  (Gilmore Decl. at ¶ 22.)  Exemption 5 allows an agency to withhold material as attorney work product, as defined in Federal Rule of Civil Procedure 26(b)(3), if it was prepared by an attorney, or non-attorney supervised by an attorney, in anticipation of litigation.  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 858, 866 (D.C. Cir. 1980).  Defendants establish that the memoranda were prepared by an attorney in the USDA OGC and by investigators at the direction of the attorney.  (Gilmore Decl. at ¶ 22.)  However, because the indices are not sufficiently detailed -- in particular, whether the "discussions of facts uncovered during the investigation" are in a document separate from the recommendations and opinions -- it is difficult to determine whether all the material was collected in anticipation of litigation.

To meet the requirement that product be prepared in "anticipation of litigation," an agency must show only that it had "a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable" in the circumstances.  In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1984); see also Coastal States Gas Corp., 617 F.2d at 865

- 27 -

(requiring a "fairly foreseeable" claim).  Product "prepared in
the ordinary course of business or pursuant to public
requirements unrelated to litigation, or for other nonlitigation
purposes" are not exempt.  Fed. R. Civ. P. 26(b); see also
Hertzberg v. Veneman, 273 F. Supp. 2d 67, 78 (D.D.C. 2003).
Although defendants present a close case here by stating that the
"records were generated in reasonable anticipation of
litigation," the declaration does not clearly indicate that the
factual material described in the justification for the
deliberative process privilege was also generated in anticipation
of litigation.  (Gilmore Decl. at ¶ 22.)  Without understanding
whether the "discussions of facts uncovered during the
investigation of Huntingdon" are contained in a separate document
from those containing the recommendations and evaluations, it is
impossible to discern whether those facts were uncovered and
memorialized at a time when the agency had objectively reasonable
belief that litigation was likely.  Of course, if the facts are
contained in the same document as is the recommendation, the
entire document may be protected by the attorney work product
privilege because it does not distinguish between facts and
opinions.[12]  From the declarations which leave the nature of the

---

[12]    Plaintiff would then need to show an inability to
obtain the material and undue hardship to justify disclosure.
Fed. R. Civ. P. 26(b)(3).

documents unclear, however, such a determination is not now possible.

B.   Exemption 4

One thousand forty-two of the 1075 pages at issue are contested under Exemption 4 of FOIA.  That exemption protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  Plaintiff does not dispute here defendants' claim that the identity of Huntingdon's clients' drug products or compounds or Huntingdon's test protocols or protocol amendments are trade secrets exempt from disclosure.  (Pl.'s Mem. at 17-18 & n. 3.[13])  For information, other than a trade secret, to qualify for protection under Exemption 4, it must be 1) commercial or financial; 2) obtained from a person; and 3) privileged or confidential.  See Nat'l Parks and Conservation Assoc. v. Morton, 498 F.2d 765, 766 (D.C. Cir. 1974); Export-Import Bank, 108 F. Supp. 2d at 28.  Plaintiff concedes here that the material is commercial and "obtained from a person."  (Pl.'s Mem. at 18.)  Therefore, defendants must show only that the information is privileged or confidential under Exemption 4.

---

[13]   However, because of the lack of an adequate Vaughn index, plaintiff did reserve the right to contest whether segregable portions remain in the disputed 1042 pages.

To qualify as "privileged or confidential" commercial information, it must be information the disclosure of which would likely cause "substantial harm to the competitive position of the person from whom the information was obtained," or "impair the Government's ability to obtain necessary information in the future." Teich v. FDA, 751 F. Supp. 243, 250 (D.D.C. 1990) (quoting Morton, 498 F.2d at 770).  Defendants argue only that Huntingdon's -- and Huntingdon's clients' -- competitive position will be substantially harmed by disclosing the contested documents.  The agency need not prove actual competitive harm to meet its burden under FOIA, but need only establish through non-conclusory evidence that "the submitters . . . actually face competition" and would likely suffer substantial competitive injury.  Niagara Mohawk Power Corp. v. United States Dep't of Energy, 169 F.3d 16, 18 (D.C. Cir. 1999); Export-Import Bank, 108 F. Supp. 2d at 19.

Of the 13 categories of documents in dispute, all suffer from a deficient description which does not allow a review of whether disclosure of those documents, or portions thereof, will likely cause Huntingdon substantial competitive harm.  For example, the Gilmore Declaration describes "Animal Tracking and Assessment Records" which contain "information regarding the suitability and selection of test subjects in accordance with the

confidential standard operating procedures and test protocols

. . .. Information that would not reveal anything about the

standard operating procedures or test protocols was segregated

and released." (Gilmore Decl. at ¶ 15(C).) Even accepting that

the information would provide Huntingdon's competitors[14] with

"information revealing Huntingdon's test designs and methods

[which] would allow them to replicate Huntingdon's research

services without investing the amount of time, effort, and money

that Huntingdon expended in developing them" (id. at ¶ 17(A); see

also Caulfield Decl. at ¶ 32r (noting that competitors would be

provided with a "head-start in execution of their own development

programs"), defendants provide nothing by which to judge the

segregability of the document. While defendants indicate that

they did conduct their own segregability analysis, they provide

no information with which an independent assessment regarding

their conclusions can be made.

Another illustrative example of the inadequacy of the Vaughn

index comes in the Gilmore Declaration description of "Final Test

Reports and Related Records." (Gilmore Decl. at ¶ 15(D).)

Although the Caulfield Declaration expressly outlines how a

---

[14]    The Caulfield Declaration establishes that Huntingdon
is one of roughly 20 large "global-reaching" contract research
organizations, all of which compete for "large, multi-million
dollar programs of work[.]" (Caulfield Decl. at ¶¶ 6, 8.)

competitor could glean from an unredacted final test report the standard operating procedures of Huntingdon (Caulfield Decl. at ¶¶ 40a-k) (stating that competitors can copy unique Huntingdon processes and infer simply from the layout of the document the type of procedures employed by Huntingdon), the conclusory statement that "no reasonably segregable nonexempt information" exists does not provide for de novo review. (Gilmore Decl. at ¶ 15(D).)  In effect, though the likelihood of substantial competitive injury may be set forth in a sufficiently specific and non-conclusory form, the index does not adequately correlate the harm to specific portions of the materials within the category of "Final Test Results" documents. (Cf. Pl.'s Mem. at 29 (arguing that Huntingdon would not suffer substantial competitive injury if the test results redacted the identity of the drug and simply noted that "the animal died").

The same deficiency plagues the next category, "Necropsy and Postmortem Examination Reports." (Gilmore Decl. at ¶ 16(C).) Those records "consist of observations that were taken through necropsy or postmortem examinations of the test subjects, and describe the physiological and health effects of proprietary experimental compounds tested on them. They contain no reasonably segregable nonexempt information." (Id.) The Caulfield Declaration further specifies that those records

- 32 -

contain information in a layout which would allow a competitor to

divine the standard operating procedures of Huntingdon.

(Caulfield Decl. at ¶ 36b.)  Again, that declaration

unequivocally sets forth the likelihood of competitive harm, but

without an adequate means to determine which portions may be

segregable, the merits of an exemption cannot be determined.

Suffice it to say that each of the other categories of

documents suffers from the same lack of specificity.[15]  Without

additional information, meaningful review of what may or may not

be valid exemptions cannot be conducted.  Accordingly, because a

de novo review cannot be completed on the current record,

defendants' motion for summary judgment with respect to the

validity of the claimed exemptions will be denied without

prejudice.  Similarly, plaintiff's cross-motion for summary

judgment claiming that the exemptions are invalid will be denied

without prejudice.

## CONCLUSION AND ORDER

Defendants have proven that they have conducted a reasonably

adequate search in response to plaintiff's FOIA request,

---

[15]    The same analysis applies to the claimed wholesale
withholding of 17 pages under Exemptions 6 & 7(C).  Without
understanding how redacting names or personal information would
render the document unintelligible or be an overly burdensome
exercise, the court cannot determine whether the exemptions are
proper.

notwithstanding the absence of a few specifically requested records.  However, defendants have failed to provide a specific index with which to judge the validity of their claimed exemptions.  Given that the gravamen of plaintiff's objections rests on the failure of the agency to provide a Vaughn index,[16] and given that the segregability analysis requires more than the categorical index offered here, it may just be that many of plaintiff's objections based on lack of information -- as opposed to substantive disputes with claimed exemptions -- would disappear with an index that followed the guidance set forth in Vaughn v. Rosen, 484 F.2d at 827 (describing an "indexing system [which] subdivide[s] the document under consideration into manageable parts cross-referenced to the relevant portion of the Government's justification").  Accordingly, it is hereby

ORDERED that defendants' motions for summary judgment [13, 14, 15] and plaintiff's cross-motion for summary judgment [18] be, and hereby are, GRANTED in part and DENIED in part. Defendants' motion for summary judgment is granted to the extent that they have proven the adequacy of their FOIA search. Conversely, plaintiff's cross-motion on that ground is denied.

---

[16]    Plaintiff characterizes some of the Caulfield Declaration as overly conclusory.  (Pl.'s Reply at 13 (citing Public Citizen Health Research Gp. v. FDA, 185 F.3d 898 (D.C. Cir. 1999)).

- 34 -

Both defendants' and plaintiff's motions for summary judgment with respect to the validity of the claimed exemptions are denied without prejudice.  It is further

ORDERED that the defendants produce, for the documents in dispute, a comprehensive <u>Vaughn</u> index describing the documents withheld (and to the extent necessary, portions thereof), the reasons for nondisclosure, and the reasons for non-segregability. The parties are directed to confer and submit a joint written status report by October 28, 2004 describing a proposed schedule by which the defendants are to produce the conforming <u>Vaughn</u> index and the subsequent dates by which the parties will file any renewed summary judgment motions or joint notice to close the case because no disputes remain.

SIGNED this 28th day of September, 2004.


_____
RICHARD W. ROBERTS
United States District Judge