UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN DEFENSE OF ANIMALS,                )
                                      )
    Plaintiff,                        )
                                      )
v.                                    )      Civ. No.  02-0557 (RWR)
                                      )
UNITED STATES DEPARTMENT OF           )
    AGRICULTURE,                      )
                                      )
    Defendant.                        )

## PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff In Defense of

Animals ("IDA") moves for summary judgment in this case under the Freedom of Information

Act, 5 U.S.C. § 552, on the grounds that the defendant United States Department of Agriculture

has failed to meet its burden of proof that all of the requested information may be withheld from

IDA.  In support of this motion, plaintiff relies on, and hereby incorporates by reference, its

February 21, 2003 motion for summary judgment in this case, its May 2, 2003 reply

memorandum in support of that motion, its February 21, 2003 Statement of Material Facts,

Plaintiffs' Exhibits A -FF and the Declarations of Barbara Stagno and Eric Kleiman, that plaintiff

submitted in support of its original motion for summary judgment, as well as Plaintiff Exhibits

GG - LL that are being submitted with this renewed motion.

Respectfully submitted,

_____
Katherine A. Meyer

(D.C. Bar No. 244301)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C.  20009
(202)  588-5206

Attorney for Plaintiff

Date:   October 28, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN DEFENSE OF ANIMALS,                    )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )        Civ. No.  02-0557 (RWR)
                                          )
UNITED STATES DEPARTMENT OF               )
        AGRICULTURE,                      )
                                          )
        Defendant.                        )

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE AND PLAINTIFF'S RESPONSE
TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE**

Plaintiff hereby incorporates the Statement of Material Facts As To Which There Is No

Genuine Issue That plaintiff filed in support of its original motion for summary judgment on

February 21, 2003, and plaintiff also incorporates its response to Defendant's original Statement

of Material Facts.  In addition, plaintiff responds as follows to the Statement of Material Facts

that the government filed on August 3, 2005:

1.      Because plaintiff does not have access to the information at issue, plaintiff has no

basis for disputing the U.S. Department of Agriculture's ("USDA's") statement concerning the

nature of the records at issue in this case, or the number of records that have been withheld, at ¶¶

2 - 3, 6-14.

2.      Plaintiff disputes the statement in paragraph 4 that all of the records at issue "were

created by Huntingdon Life Sciences," since, according to the USDA itself, many of the records

were generated by either the Institutional Animal Care and Use Committee" ("IACUC") or the

USDA.  See USDA Statement of Material Facts at ¶¶ 12, 14.  For the same reason, plaintiff

disputes the statement in paragraph 5 that the USDA "obtained" all of these records when it

conducted its investigation, since many of these documents were generated by the USDA itself,

and hence were not "obtained."  Id.

     3.     Plaintiff disputes the statements contained in paragraph 15 concerning

segregability for the reasons set forth in plaintiff's renewed summary judgment memorandum.  In

addition, the issue of whether the government has complied with its duty under the segregability

requirement is an issue of law to be decided by the Court.

                  Respectfully submitted,

                  _____

                  Katherine A. Meyer
                  (D.C. Bar No. 244301)

                  Meyer Glitzenstein & Crystal
                  1601 Connecticut Ave., N.W.
                  Suite 700
                  Washington, D.C.  20009
                  (202)  588-5206

                  Attorney for Plaintiff

Date:   October 28, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN DEFENSE OF ANIMALS,              )
                                    )
     Plaintiff,                    )
                                    )
     v.                            )        Civ. No.  02-0557 (RWR)
                                    )
UNITED STATES DEPARTMENT OF         )
     AGRICULTURE,                  )
                                    )
     Defendant.                    )

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
ITS CROSS-MOTION FOR  SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT**

**Preliminary Statement**

Plaintiff In Defense of Animals ("IDA") brought this Freedom of Information Act

("FOIA") case over four and a half years ago to obtain access to the closed investigatory records

of the United States Department of Agriculture ("USDA") concerning its 1997 investigation of

Huntingdon Life Sciences ("Huntingdon").  Although the USDA charged Huntingdon on March

30, 1998 with more than 20 separate violations of the Animal Welfare Act ("AWA"), 7 U.S.C.

§§ 2131 *et* seq.,  including the failure to provide treatment to animals suffering extreme pain, and

the failure to use appropriate methods to prevent and treat injuries in animals, a week later, the

USDA entered into a settlement that required Huntingdon to pay a fine of only $10,000.  IDA

submitted its original FOIA request – and continues to seek access to the agency's long dormant

investigatory records –  in an effort to shed some light on whether the agency diligently carried

out its duties under the Animal Welfare Act and why, if in fact the agency had amassed

considerable evidence of so many violations of the statute by this particular animal research

facility, it was willing to accept such a relatively small fine in resolution of those violations.

IDA's effort to obtain the agency's closed investigatory records is completely consistent with what the Supreme Court has held is the "basic purpose" of the FOIA – i.e., "to open agency action to the light of public scrutiny," Dep't of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 772 (1989). IDA's desire to shed light on this matter remains particularly acute in light of a recent Report by the USDA's own Inspector General, which found that the USDA "is not aggressively pursing enforcement actions against violators of the AWA," and that "[w]hen violators are assessed stipulated fines, the fines are usually minimal and not always effective in preventing subsequent violations." See Audit Report: APHIS Animal Care Program Inspection and Enforcement Activities, Report No. 33002-3-SF (September 2005) (attached as Plaintiff's Exhibit GG) at 4 (emphasis added); see also id. at 7 ("because facilities are realizing there is no consequence for violating the AWA, the number of repeat violators . . . is increasing").

Although the USDA's investigation of Huntingdon is long over, the agency nevertheless insists, on Huntingdon's behalf, that hundreds of the agency's investigatory records may be withheld under Exemption 4 of the FOIA, 5 U.S.C. 552(b)(4), because disclosure of every single word of those documents is likely to cause "substantial competitive injury" to Huntingdon.[1] However, as this Court well knows, IDA long ago made absolutely clear that it was not seeking access to any information that would reveal Standard Operating Procedures or test protocols used by Huntingdon, nor does IDA seek access to any information that would reveal the identities of Huntingdon's clients or the identities of any drugs, compounds, or other products

_____

[1]Huntingdon has intervened in the case, and filed a motion for summary judgment joining the government's motion.

that Huntingdon was testing.  See  September 28, 2004 Memorandum Opinion ("Mem. Op.") at

20; see also Memorandum In Support of Plaintiff's Motion for Summary Judgment (February 21,

2003) ("Pl. SJ Mem.") at 2, 17, 23 ; Plaintiff's Reply to Defendants' Opposition To Plaintiff's

Motion for Partial Summary Judgment (May 2, 2003) ("Pl. SJ Reply") at 1-2.

Rather, plaintiff seeks access to the evidence that the USDA relied on to conclude that

Huntingdon was in violation of numerous standards of animal care and treatment under the

AWA, including, for example,  information that shows that animals were being mistreated, that

animals were being denied veterinary care, and that Huntingdon's treatment and care procedures

violated the statute.  In addition, plaintiff seeks access to 56 pages of records generated by

Huntingdon's own "Institutional Animal Care and Use Committee" ("IACUC") – the entity

within Huntingdon that is responsible for ensuring that the company complies with the Animal

Welfare Act,  see 7 U.S.C. § 21439(b) –  that contain similar information, as well as information

concerning Huntingdon's possible violations of the Animal Welfare Act.  However, plaintiff

does not seek access to information in any of these records that would reveal any of the

information that IDA has already made clear it does not want – e.g., test protocols, standard

operating procedures, names or other identities of drugs or compounds, and names of

Huntingdon's customers.

Therefore, since the FOIA requires the USDA to segregate and disclose all non-exempt

information, 5 U.S.C. 552(b), see also Mem. Op. at 19,  plaintiff has long contended that the

USDA simply cannot meet its burden of proof that all of the information that has been withheld

is nevertheless exempt from disclosure under Exemption 4, since it would be extremely difficult,

if not impossible, for any competitor of Huntingdon's to successfully use the bare results of tests,

and observations of animals without knowing the product being tested or the company for which

3

it was being tested.  See Pl. SJ Mem. at 28-29; Pl. Reply Mem. at 11-15.

In its September 28, 2004 Opinion, the Court agreed with plaintiff that, particularly in light of the way in which IDA had narrowed its request, the USDA had failed to demonstrate that it had met its burden to segregate and disclose all non-exempt information from the documents. See Mem. Op. at 32.  Thus, the Court held, "[o]f the 13 categories of documents in dispute, all suffer from a deficient description which does not allow a review of whether disclosure of those documents, or portions thereof, will likely cause Huntingdon substantial competitive harm." Mem. Op. at 29 (emphasis added).  For example, as plaintiff argued, the USDA had failed to provide any explanation as to why disclosure of the actual result of a particular research experiment – i.e., "the animal died" – is likely to cause  Huntingdon "substantial competitive injury," if the agency deletes from the document any information that identifies the test protocol, the substance being tested, or the name of Huntingdon's client.  See Pl. SJ Mem. at 29; see also Mem. Op. at 31 (citing this example to illustrate the agency's failure to meet its segregability requirement).  Therefore, the Court ordered the USDA to  produce a "comprehensive Vaughn index describing the documents withheld (and to the extent necessary, portions thereof), the reasons for nondisclosure, and the reasons for non-segregability,"  Mem. Op. at 34 (emphasis added) -- i.e., some articulation as to why the actual information plaintiff seeks -- without more detail -- would nevertheless cause Huntingdon "substantial competitive injury" if it were released..

In response, remarkably, the agency continues to insist that plaintiff seeks access to such information as "the design and methods used in scientific tests conducted by Huntingdon," and then argues that "information describing Huntingdon's test designs and methods" would "reveal Huntingdon's special and unique procedures for conducting its tests."  See Banks Decl. at 2-3

4

(emphasis added).  The agency therefore once again attempts to parlay its own misstatement of what is at stake in this case into an argument that such information is traditionally considered extremely commercially valuable.  See, e.g., Defendants' Renewed Summary Judgment Memorandum ("Def.. SJ Mem.") at 9 ("[r]elease of information about proprietary experimental tests could cause harm to Huntingdon's clients by allowing competitors of those clients a head start in developing competitive products because the competitors would be able to focus their own research and development effort on those compounds that have promise") (emphasis added).

However, not only is plaintiff not seeking access to such information, but, in direct contravention of this Court's meticulously crafted opinion regarding the segregability requirement,  the USDA has still failed to demonstrate why the actual information plaintiff seeks – e.g., bare test results, observations of the effects on animals, and the bases for the agency's decision to charge Huntingdon with numerous violations of the AWA – cannot be segregated from other parts of the investigatory records that may reveal information such as test protocols and identities of compounds, which plaintiff does not wish to obtain, without causing Huntingdon any competitive injury whatsoever, let alone "substantial" competitive injury, as required for the agency to meet its burden of proof under Exemption 4.  National Parks and Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974).

Thus, although the agency has now compiled an actual "index" of the documents that have been withheld,  neither that index, nor the agency's only new declaration from its FOIA Officer Lesia Banks makes any demonstration as to why disclosure of the information that plaintiff seeks – versus the information that plaintiff does not seek - is likely to cause Huntingdon "substantial competitive injury."  Therefore, because the agency has stilled failed to perform the specific task required by this Court over a year ago, its renewed motion for summary judgment

must be denied and plaintiff should at long last be granted access to all of the information that it requested over five years ago.  See Public Citizen Health Research Group v. Food and Drug Administration, 185 F.3d 898, 905 (D.C. Cir. 1999) (where agency fails to meet its burden of proof that Exemption applies, court orders release of information); see also Carlton v. Dep't of Interior, Civ. Action 97-2105 (D.D.C. Sept. 3, 1998), slip op. at 16-17 (attached as Pl. Ex. HH), (given the agency's "apparent inability to prepare an adequate index" and "FOIA's 'general philosophy of full agency disclosure,'" the agency must "produce all agency records withheld"). In the alternative, at an absolute minimum, the Court should conduct an *in camera* inspection of certain categories of records, and samples of others, to ascertain whether the agency has in fact met its duty to segregate and disclose all non-exempt information.[2]

## BACKGROUND

Rather than repeat all of the facts and arguments that support plaintiff's renewed motion for summary judgment, plaintiff hereby incorporates by reference and relies on its previous Summary Judgment Memorandum (February 21, 2003)  and Reply Memorandum (May 2, 2003), Plaintiff's Exhibits A - FF submitted in support of plaintiff's original motion for summary judgment, and the Declarations of Barbara Stagno and Eric Kleiman that were submitted in opposition to the USDA's original motion for summary judgment.  However, to insure that the Court is up to date on what has happened since the issuance of its September 28, 2004 ruling, and to be clear on what remains at issue in this case, plaintiff sets forth below the pertinent factual background of this case since the Court issued its ruling.

---

[2] As explained, *infra*, since the Court's September 28, 2004 decision, plaintiff has withdrawn its request for the few documents that the agency was withholding under Exemption 5.  Therefore, the only Exemption that remains at issue in this case is Exemption 4.

## A.   <u>The Information Sought by Plaintiff And The Court's Ruling</u>

At the time the Court issued its September 28, 2004 decision, IDA had made clear that it did not want access to the following categories of information from <u>any</u> of the Huntingdon investigatory records compiled by the USDA: (1)any info withheld under Exemption 6 or 7(C) that would identify personal information; (2) any of Huntingdon's Standard Operating Procedures; 3) any "animal husbandry records;" (4) "test protocols and protocol amendments;" (5)  "animal tracking and assessment records;"and (6) "dosing charts."  <u>See</u> Pl. SJ Mem. at 2, 17, 23; <u>see</u> <u>also</u> Mem. Op. at 4-5.   In addition, IDA informed the USDA that it also was not interested in obtaining <u>any information that identifies any of Huntingdon's customers or the products or compounds that were the subject of any of the research projects</u> that were underway when the agency conducted its investigation.  <u>See</u> Pl. SJ Mem. at 2; Mem. Op. at 6.

Nevertheless, when the government originally moved for summary judgment in this case, it continued to insist that the records plaintiff seeks would result in "substantial competitive injury" to Huntingdon, largely because such records would reveal the very kinds of information that IDA made clear it did not want – <u>e.g.</u> Huntingdon's "Standard Operating Procedures," as well as its "clinical protocols and clinical development plans," and "test designs and methods," and "specific details on study designs."  <u>See</u>, <u>e.g.</u>, the USDA's [Original] Summary Judgment Memorandum at 11-13; Declaration of Michael Caulfield .  Thus, in opposing the government's motion for summary judgment, and in cross-moving for summary judgment on the grounds that the agency had not met its burden of proof under Exemption 4, IDA demonstrated that the agency had not met – and could not meet – its burden of proof that all of the information IDA seeks cannot be segregated and released from the responsive records without causing Huntingdon "substantial competitive harm."  <u>See</u> Pl. SJ Mem. at 26-31; Pl. Reply at  9-15.

As noted above, the Court agreed with this particular argument, and denied the government's motion for summary judgment.  However, rather than granting summary judgment for plaintiff and ordering release of the requested information – which the Court clearly could have done, see Public Citizen Health Research Group, *supra*, the Court instead gave the government another opportunity to meet its evidentiary burden.  Accordingly, the Court ordered the USDA to produce "a comprehensive Vaughn index describing the documents withheld (and to the extent necessary, portions thereof), the reasons for nondisclosure, and the reasons for non-segregability."  Mem. Op. at 34 ( emphasis added).

### B.    Proceedings That Occurred After The Court's Ruling

In response to the Court's directive, on December 22, 2005, the USDA provided to plaintiff a 149-page index of the records at issue.  See USDA "Vaughn Index."   However, although IDA had long ago made clear that it was not interested in obtaining certain categories of information, such as personal information about Huntingdon's employees, withheld under Exemptions 6 and 7(C),  and information that would reveal the identity of a product or compound, or the identity of any of  Huntingdon's clients, the USDA's new " Vaughn" index continues to describe such information as if it is remains at issue.  More important, that index does not address the segregability issue that the Court directed the agency to address – i.e., it does not explain "the reasons for non-segregability" of the actual information that plaintiff continues to seek.  Mem. Op. at 34.

Therefore, on January 27, 2005, plaintiff's counsel wrote the USDA's counsel a letter thanking the agency for providing – for the first time – an actual list of the records that contain the information at issue in the case.  See Letter to Anne Work from Katherine Meyer (January 27, 2005) (attached as Pl. Ex. II ).  However, plaintiff's counsel explained that she was "puzzled as

8

to why the government continues to treat as records and portions of records that are at issue in

this case material that IDA long ago made clear it does not seek, including (a) the names and

other identifying information of individuals; (b) protocols and other standard operating

procedures; (c) the identity of customers; and (d) the identity of formulas, compounds, or other

products that were being tested." Id.  Thus, plaintiff's counsel stated, "since the plaintiff has

made clear that it does not seek such information and that, accordingly, such information simply

is not at issue in this case, we do not understand why it is included in the new Vaughn index."

Id. at 2 (emphasis added).  Plaintiff's counsel further explained that, since such information

simply was not at issue in this case, "should we have to brief this case again, there would be

absolutely no reason for the government to spend any time" briefing these matters," since,

"[a]gain, none of this material is at issue in this case." Id. (emphasis added).  Therefore,

plaintiff's counsel explained, "it would have much more sense for the USDA to eliminate such

material from the Vaughn index, so that we – and the Court, if necessary, would have a true

indication of what records, and portions of records, actually remain at issue." Id. (emphasis

added).

    Plaintiff's counsel further complained that the agency's new index "still does not address

– at all – the segregability issue that was as the heart of Judge Robert's September 28, 2004

decision."  Thus, she explained, "the USDA is continuing to withhold hundreds of pages of

documents on the basis of Exemption 4, when the explanations for those withholdings include

descriptions of the withheld material as including information such as protocols, operating

procedures, customer names, identities of compounds, etc." Id. (emphasis added).  She further

explained that "since none of that information is at issue in this case – and therefore can be

deleted and withheld here – the agency still has not explained how disclosure of the remainder of

the document, e.g., the 'results' of the study, or the 'observations,' or 'effects' on the animals, without any information that would identify which client, compound, or product is at issue, would nonetheless still cause Huntingdon Labs 'substantial competitive injury.'" Id. (emphasis added).

In light of those concerns, and IDA's "desire to limit the areas of dispute as much as possible without resorting to additional litigation," IDA proposed "a meeting of the parties at which someone with knowledge of the documents could answer our questions, particularly regarding segregability, and whether particular documents and portions of documents – especially those concerning the 'results' of studies, 'observations,' 'conclusions,' 'effects,' and the like –could be disclosed without revealing information such as the protocol for an experiment, a customer name, a particular compound or formula, etc." Id. (emphasis added). IDA's counsel further explained, that "without such additional information," IDA would have no choice but "to either move for summary judgment on the grounds that the agency had not met its burden of proof under FOIA, especially with respect to its obligation to disclose all segregable non-exempt information, and/or to ask Judge Roberts to conduct an in camera inspection of a portion of the documents for this purpose, or permit us to take discovery." Id.

In response, the agency agreed to provide IDA with additional information regarding the few remaining documents that were being withheld under Exemption 5, see Mem. Op. at 24-28, and, on the basis of that additional information, plaintiff withdrew its request for access to those documents. See Letter to Anne Work from Katherine Meyer (April 22, 2005) (attached as Pl. Ex. JJ). However, the USDA refused to provide IDA with any of the requested information concerning the vast number of documents that have been withheld under Exemption 4, or to devise any procedure whereby it could explain to IDA why the agency could not segregate and

disclose any of the information that IDA seeks without causing Huntingdon "substantial competitive injury."

In fact, in an effort to facilitate the agency's segregability exercise, by letter dated April 22, 2005, plaintiff's counsel provided the USDA with a list of the categories of information identified in the agency's own "Vaughn Index" that plaintiff wishes to obtain, and repeated that such information could be segregated from other information in the records that might reveal matters that plaintiff does not want.  Thus, plaintiff's counsel requested that the USDA provide IDA with (1) all of the Minutes of Huntingdon's Institutional Animal Care and Use Committee ("IACUC") and related records (listed as "LSR 2102-2231"); and (2) information described in the Vaughn Index as "results," "observations,"conclusions," "effects," "information on mortality," "dosing observations;" "date of study," "housing and care of the animals," "information on compliance with protocols," "monitoring," "data resulting," "graphs;" "findings;" and "information on treatment."  Id.  Thus, plaintiff's counsel explained, if the agency would be willing to go through the documents listed on the Vaughn index, and delete the information that IDA has said it does not want, and make sure that IDA is provided with the categories of information that it does want, as listed above (minus information that would identify protocols, compounds, or clients), IDA would accept such information in full satisfaction its outstanding FOIA request.  Id.

However, rather than go through this exercise and segregate and disclose only the information that plaintiff seeks, instead the USDA has chosen to again move for summary judgment with respect to all of these records – without deleting the information that plaintiff does not seek – and without providing any information, whatsoever, as to why it cannot segregate from the documents the information that plaintiff does want, or to explain why that information

11

is exempt from disclosure.

Moreover, although this Court already ruled over a year ago that the USDA had failed to meet its burden of proof based on the declarations it submitted by Hugh Gilmore, a USDA official, and  Michael Caulfield, a Huntingdon official – <u>see</u> Mem. Op. at 32, the USDA's renewed motion for summary judgment nevertheless again relies heavily on <u>both</u> of those declarations to meet its burden of proof that all of the information sought by plaintiff is exempt from disclosure under Exemption 4.   In addition, the agency has submitted one new declaration from Lesia Banks, another USDA FOIA officer.  However, that declaration – like Mr. Gilmore's before it – is not based on any personal knowledge of Huntingdon's competitive status or how release of the actual information requested by plaintiff would cause Huntingdon, or anyone else, "substantial competitive injury" as required by Rule 56(e) of the Federal Rules of Civil Procedure and <u>National Parks</u>.  <u>See</u> Pl. Reply Mem. at 19-20; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Jameson v. Jameson</u>, 176 F.2d 58, 61 (D.C. Cir. 1949) ("personal knowledge" requirement of Rule 56(e) is mandatory – affidavits submitted in support of motion for summary judgment must follow "the same form as though the affiant were giving testimony in court").

As further demonstrated below, Ms. Banks declaration also fails to contain <u>any</u> explanation as to why the information plaintiff seeks cannot be segregated from other information that plaintiff does <u>not</u> seek, such as the names of compounds and products, and disclosed to plaintiff without causing Huntingdon "substantial competitive harm."  Accordingly, once again, this Court must deny the USDA's motion for summary judgment, on the grounds that the agency has failed to meet its burden of proof.  <u>See</u> <u>Public Citizen Health Research Group</u>, *supra*.  However, this time, the Court should not give the USDA yet another chance to cure its deficiencies.  Rather, consistent with the public's right to know what its government is up to,

Reporters Committee, *supra*, the Court should order the immediate release of this long overdue information. See also Carlton, *supra* (Pl. Ex. HH).

## ARGUMENT

Plaintiff's arguments here with respect to information being withheld under Exemption 4 are the same as those previously made in support of IDA's February 21, 2003 motion for summary judgment. Accordingly, for the Court's convenience, rather than repeat those lengthy arguments here, plaintiff hereby incorporates them all by reference. Moreover, it is crucial to emphasize that – once again – the USDA continues to erroneously state the nature of the information that is at issue in this FOIA case. Thus, even after all these years, the USDA continues to insist that plaintiff seeks access to information such as "designs and methods used in Huntingdon's studies," "descriptions of the experimental compounds," and "procedures used for administering the experimental compounds." See, e.g., USDA Renewed SJ Mem. at 10. However, as this Court well knows, this simply is not true. Therefore, the agency certainly should not be granted summary judgment by arguing that information that has not been requested here is of a kind that is typically found to be commercially sensitive in other contexts.

Rather, the agency must be held to the task the Court imposed on it over a year ago – i.e., to prove that disclosure of the actual information requested by plaintiff, without corresponding identification of products or client names, is nevertheless "likely" to result in "substantial competitive injury" to Huntingdon if it is disclosed. However, since the USDA has once again failed to make any such showing, its motion for summary judgment must be denied, and plaintiff must be granted access to the requested information.

**A.      The Government Has Not Met Its Burden To Prove
That The Actual Information Requested By IDA Is Exempt
From Disclosure Under Exemption 4.**

The parties agree that, to withhold any of the remaining information at issue in this case

the USDA must prove that the the disclosure of all such information "is likely to cause "

Huntingdon "substantial competitive injury" within the meaning of <u>National Parks</u>.  <u>See</u> Def. SJ

Mem. at  6.  However, once again, because the USDA insists on misstating what is at issue in

this case, it has failed to meet that burden of proof.

**1.      Final Test Reports and Related Records, Clinical Observation
Raw Data Reports, and Interim Test Reports.**

The USDA states that it has withheld a total of 267 pages in their entirety of (1) Final

Test Reports (124 pages), Clinical Observation Raw Data Reports (121 pages), and "Interim Test

Reports (22 pages).  USDA Renewed SJ Mem. at 10-11.  As to the Final Test Reports and

Related Records, the agency states that disclosure of such records is likely to cause substantial

competitive injury to Huntingdon because it reveals "detailed descriptions of the designs and

methods used in Huntingdon's studies," including the "stability of the experimental compound

under the conditions of administration," and "descriptions of  the experimental compounds."

Def. SJ Mem. at 10.

However, as explained above – and throughout this litigation – plaintiff is not seeking any

such information.  Accordingly, there simply is no basis whatsoever to the USDA's contention

that release of the information that plaintiff <u>does</u> seek will cause Huntingdon any competitive

harm, particularly when, as IDA has also made abundantly clear, the agency may delete from

<u>all</u> of the records at issue any information that identifies Huntingdon's test protocols, the

14

substance or compound being tested, or the identities of any of Huntingdon's customers or

clients.  Thus, as plaintiff pointed out in its previous summary judgment briefs, in sharp contrast

to what is at stake here, all of the Exemption 4 cases relied on by the USDA involved situations

where either the substance being tested or similar details were already known to the submitter's

competitors.  See, e.g., Pl. SJ Mem. at 24-25; Pl. SJ Reply at 14-15.  However, here, because

plaintiff has authorized USDA to delete such information from the requested records, there

simply is no similar likelihood of competitive harm to Huntingdon.[3]

Thus, for example, since none of Huntingdon's competitors would know to which

products and/or clients the fragmented documents pertain, there is no legitimate basis for the

USDA to continue to hold information that "reveals the physiological and health effects of

experimental compounds being tested" – as long as the USDA deletes the identity of such

compounds – or "the pharmacological responses of test subjects."  See USDA SJ Mem. at 10.

Accordingly, such information must be disclosed.  Nor, without the test methods or design, name

of the product, or identity of the client, should release of the "raw data" from the tests conducted

by Huntingdon, which are encompassed in the "Clinical Observation Raw Data Reports" be

exempt from disclosure.  Def. Mem. at 11.  For similar reasons, the USDA has failed to

demonstrate how the "summaries of clinical observation taken during the tests" contained in the

_____

[3]The only additional cases cited by the USDA, Def. Mem. at 12-13, do not help its cause,
since the passages cited by defendants merely recognize the commercial benefit a competitor
would obtain from having access to, and being able to rely on, "all of the data" contained in its
competitor's new drug application that was pending at the Food and Drug Administration.
Webb v. HHS, 696 F.2d 101,103 (D.C. Cir. 1982); see also United States v. Generix Drug Corp.,
460 U.S. 453, 455 n.1 (1983) and Tri-Bio Labs., Inc. v. United States, 836 F.2d 135, 143 (3d Cir.
1987).  Here, however, not only does IDA not seek access to all such data, but, in contrast to all
of the cases cited by defendants, the identities of any drugs that may have been the subject of
Huntingdon's research are not known, and are also not being requested in this FOIA case.

22 pages of "Interim Tests Reports, id., " – without the test protocols, identity of compound, or

identity of client – would nonetheless cause Huntingdon "substantial competitive injury."

Therefore, with respect to the 267 pages in these categories of records that have been

withheld from IDA, the USDA has failed to meet its burden of proof.[4]

### 2. Necropsy and Postmortem Examination Reports, Viability Records, And Veterinary Treatment Requests and Logs .

The USDA is withholding 23 pages in their entirety of "Necropsy and Postmortem

Examination Reports," that contain "observations that were taken during examinations of the

bodies of dead animals."  Def. SJ Mem. at 18.  According to the agency, these records describe

"physiological and health effects of proprietary experimental compounds," and other

information.  Id.

However, again, since plaintiff does not want any information that discloses the

"proprietary experimental compounds" that were being tested by Huntingdon in 1997 ( nor, for

that matter, has the agency demonstrated that any of Huntingdon's actual competitors would be

---

[4] One of the cases relied on by plaintiff in its previous motion for summary judgment, McDonnell Douglas v. U.S. Dep't of Justice, 215 F. Supp. 2d  200 (D.D.C. 2002), see Pl. SJ Mem. at 29, has since been reversed in some respects. 375 F.3d 1182 (D.C. Cir. 2004). However, in that reverse FOIA case, the Court of Appeals determined that the agency's release of information concerning actual "pricing" information was likely to cause "substantial competitive injury" because the submitter had demonstrated that such information, coupled with other information that was known to the competitor, would allow the competitor to underbid the submitter for future contracts.  See Id. at 1188-89.  Here, in sharp contrast, the USDA has not submitted any remotely analogous proof of competitive harm, but instead continues to rely on only the most conclusory statements of harm that the Court of Appeals has long ago denounced as sufficient under Exemption 4, and which this Court already rejected in its first opinion.  See Pl. SJ Reply at 9-15; see also Mem. Op. at 21 (finding that the USDA's declarations are "inadequate," because "they provide little more than a summary attestation of the type of information included within each category of information with a 'categorical indication of anticipated consequences of disclosure'") (emphasis added) (internal citation omitted).

interested in such antiquated information), the agency has not demonstrated how the actual observations of "physicological and health effects" experienced by the animals – without the identity of the compound – would nevertheless cause Huntingdon "substantial competitive injury."

The USDA is also withholding 28 full pages of "observation sheets" that "relate to physical observation of animals in the studies," id. at 19, but it fails to demonstrate how the disclosure of such raw observations, without corresponding information concerning the test methods, compound identity, or Huntingdon customer, could possibly cause Hungtingdon "substantial competitive injury."  The same is true with respect to the 58 pages withheld in full and 397 pages withheld in part that consist of "charts of clinical observations of the condition of test subjects taken during testing."   USDA SJ Mem. at19 (emphasis added).  Again, without corresponding information concerning the test design, name of compound, or identity of client, the USDA has failed to demonstrate that disclosure of the bare "clinical observations" of the animals would nevertheless cause Huntingdon "substantial competitive injury."

Likewise, although the agency is withholding 94 pages in full and 20 pages in part of "Veterinary Treatment Requests and Logs," which contain "information related to treatments provided to 'alleviate reactions of side effects caused by tested compounds,'" Def. SJ Mem. at 20, the agency fails to demonstrate how the release of information about "side effects" could possibly cause Huntingdon "substantial competitive injury" if the agency does not also disclose the identity of the "tested compound" to which those side effects relate.

Moreover, the only statement concerning segregability  in Ms. Banks' declaration concerns the reasons certain information was segregated and disclosed from these records, i.e.,

17

because they revealed "[o]bservations that <u>did not appear to reveal anything about the test</u>

<u>results</u>," for example, "subjects being bitten by other subjects," or subjects "getting caught in

their cages," Banks Decl. at ¶ 5D(1) (emphasis added) – or, in other words, information which is

of no interest to IDA. However, what the agency fails to provide is any explanation as to why the

<u>other</u> information contained in these documents – including information that would actually shed

light on the agency's decision to charge this company with numerous violations of the Animal

Welfare Act – was <u>not</u> segregated and disclosed to IDA. <u>See</u> <u>Johnson v. Executive Office of</u>

<u>U.S. Attnys</u>, 310 F.3d 771, 776 (D.C. Cir. 2002) ("[i]n order to demonstrate that all reasonably

segregable material has been released, <u>the agency must provide a 'detailed justification' for its</u>

<u>non-segregability</u>") (emphasis added).

In addition, Ms. Banks states that 58 pages of "viability records" were withheld in full

because, "in addition to containing clinical observations about the physiological and health

effects of the tested compounds, their very structure [<u>i.e.</u>, the structure of the "charts"] reveals the

test results." Banks Decl. ¶ 4D(2). However, what Ms. Banks fails to explain is why, if no one

knows what was being tested, or even for whom, disclosure of the "test results" themselves –

<u>e.g.</u>, the animal died – as well as the "anticipated results" of any such tests, <u>e.g.</u>, "death?" –

would nonetheless cause Huntingdon "substantial competitive injury."

Therefore, with respect to the 203 records that have been withheld in their entirety in

these various categories, and the 424 records that have been withheld in part, the USDA has also

failed to meet its burden of proof.

18

**3.     Information from Institutional Animal Care and Use
Committee (IACUC) Records, Internal Huntingdon
<u>Memoranda, and Internal USDA Investigatory Memoranda</u>**

The USDA has withheld the vast majority of 56 pages of records generated by

Huntingdon's "Institititional Animal Care and Use Committee" ("IACUC") – the entity

within Huntingdon that is responsible for ensuring that the company complies with the

Animal Welfare Act.  <u>See</u> 7 U.S.C. § 21439(b); Pl. SJ Reply at 16.  The USDA contends

that such records reveal information such as  "detailed descriptions of Huntingdon's

research facilities and equipment" and "implementation of testing procedures," and that

they also contain "specific details about confidential research programs placed at

Huntingdon by its clients."  USDA SJ Mem. at 25-26; <u>see</u> <u>also</u> IACUC Records (attached

as Pl. Ex. KK).  However, again, plaintiff does not seek any information that would

reveal "specific details" about  test methods or designs, nor does it seek information that

would identify either a product being test or a Huntingdon client.

Therefore, the agency has failed to demonstrate how disclosure of  the remainder

of such records would cause Huntindgon "substantial competitive injury."  Moreover,

notably, <u>nothing</u> in Ms. Banks declaration even mentions segregability with respect to

these particular documents, other than her statement that the "[r]elease of all items not

segregated and released to the Plaintiff . . . would reveal confidential information about

Huntingdon's general business practices and its research operations."  Banks Decl. ¶ 4B.

Accordingly, because such an extremely conclusory statement cannot possibly satisfy the

agency's obligation to provide a "detailed justification" of  its non-segregability, <u>Johnson</u>,

*supra*, the Court should order the release of all of the requested information.  <u>See</u> <u>also</u> Pl.

19

SJ Reply at 11-15.

Moreover, because the IACUC records consist of a manageable portion of the withheld records, and because IDA definitely wants to obtain access to these records, or as much of these records as possible, IDA requests that, if the Court will not order the immediate release of such information on the grounds that the USDA has failed to meet its burden of proof, alternatively, the Court examine these particular records *in camera* to insure that USDA has disclosed all segregable non-exempt information.  See  e.g. Spirko v. United States Postal Service, 147 F.3d 992, 996 (D.C. Cir. 1998) (court may exercise discretion to examine documents *in camera* where necessary to perform its *de novo* review).

The USDA has also withheld 33 pages in full and 7 pages in part of "Internal Huntingdon Memorandum" which, according to the agency, contain "discussions of issues that arose during the course of tests," and "concern the use of test designs and methods in light of observations taken during the tests."  USDA SJ Mem. at 28 (emphasis added).  However, again, since plaintiff does not want any information that reveals Huntingdon's "test designs and methods," the agency has failed to demonstrate how disclosure of the remainder of these records – e.g., the "observations taken during the tests" – would cause the company "substantial competitive injury."  Instead, the agency simply makes the conclusory – and completely  unilluminating – statement that "[i]nasmuch as these discussions concern the use of test designs and methods in light of observations taken during the tests (all of which are exempt), these memoranda contain no reasonably segregable information").  See Banks Decl. ¶ 5F (emphasis added).

Therefore, because the agency has failed to meet its burden of proof with respect to these records, the Court should either order the USDA to disclose the information requested by plaintiff, or, alternatively, conduct an *in camera* inspection of these 40 pages to determine whether the USDA has met its duty to segregate and disclose all information that is not exempt under Exemption 4.

Similarly, the USDA states that it has withheld information under Exemption 4 from 27 pages of "internal USDA memoranda" that "discuss the bases for each charge that USDA contemplated bringing against Huntingdon for violations of the Animal Welfare Act."  Def. Mem. at 26; see also Pl. Ex. LL (copies of some of the records from which substantial deletions have been made).  However, the agency fails to demonstrate how the release of such information, i.e. the "bases" of the agency's decision that Huntingdon had violated the Act  – without identifying a test method, compound, or customer – would cause Huntingdon any competitive injury.  See also CNA Financial Corp. v. Donovan, 830 F.2d 1132, 1153-54 (D.C. Cir. 1987) (concerns about "adverse public reaction" to released information are "unrelated to the policy behind Exemption 4); General Election v. NRC, 750 F.2d 1394, 1402-03 (7th Cir. 1984) ("the competitive harm that attends any embarrassing disclosure is no the sort of thing that triggers exemption 4").

In addition, the  agency's own "Vaughn Index" states that the USDA  has also withheld information from these documents such as "a description of observation and treatment of animals in the study," and "animal reactions to the drug being studied," see, e.g., Vaughn Index, at 128-132, yet, the agency has failed to demonstrate how the release

of any such isolated information could possible result in substantial competitive injury to Huntingdon.  Indeed,  Ms. Banks says absolutely <u>nothing</u> in her declaration about segregability with respect to these particular records.  <u>See</u> Banks Decl. at ¶  5G.

Accordingly, the USDA has also failed to meet its burden of proof with respect to these 27 documents, and, accordingly, it should be required to release to plaintiff all of the information that has been requested.  Alternatively, the Court should also examine these 27 pages *in camera* to insure that the agency has disclosed all segregable non-exempt information.

      **4.**        <u>**Additional Records Not Discussed By The USDA**</u>

The USDA has also withheld 16 records described as "Communications from Huntingdon to USDA," and 13 documents described as "Communications Between Huntingdon and Its Clients," which do not appear to be addressed at all in the government's brief or in Ms. Banks' new declaration.  Accordingly, the USDA is certainly not entitled to summary judgment with respect to those 29 documents, and the agency should be required to disclose to plaintiff all of the information that falls within its request.

      **B.**        **The USDA Has Failed To Meet Its Burden Of Proof That It Has Disclosed All Segregable Non-Exempt Information.**

Since this Court has already rejected both the Caulfield and Gilmore Declarations previously relied on by the government as insufficient to meet the USDA's burden of proof on the segregability issue, Mem. Op. at 32, the only possible way the government can satisfy the Court's previous ruling on this issue is through either the USDA's <u>Vaughn</u>

index itself, or with the new declaration from Lesia Banks.   However, as explained

above, the <u>Vaughn</u> index not only includes vast amounts of information that simply is not

at issue in this case, but fails to provide any information on the segregability question.

<u>See</u> <u>Vaughn</u> Index.

Unfortunately for the government, Ms. Banks' declaration is also woefully

inadequate on this point.  Thus, rather than provide any indication of <u>why</u> the categories

of information clearly  requested by plaintiff – including, but not limited to, the basic

evidence for the agency's conclusions that Huntingdon was engaged in flagrant violations

of the Animal Welfare Act – cannot be segregated and disclosed, Ms. Banks' declaration

instead contains only the most conclusory statements that documents have been withheld

in full or in part because "they contain no reasonably segregable nonexempt information."

<u>See</u> Banks Decl. at ¶¶ 4(A), 5A, 5B, 5C,  ; <u>see</u> <u>also</u> <u>id.</u> at ¶ 3 ("[a]ll other reasonably

segregable nonexempt information was released to the plaintiff");  ¶5E(2) ("[g]iven the

detailed nature descriptions [sic] of the symptoms and treatments reflected in these

records, no nonexempt information could be reasonably segregated and released from

them").

However, it is now well established – as this Court has already held – that such

conclusory assertions that the segregability requirement has been met simply do not

suffice under the FOIA.  <u>See</u> <u>e.g.</u>, Mem. Op. at 24 ("though the declarants aver within

each category that 'they contain no reasonably segregable nonexempt information' and

summarize why that may be so, <u>the indices were not created with sufficient detail to</u>

<u>permit judicial review of those conclusions</u>") (emphasis added); <u>see</u> <u>also</u> Johnson, *supra*.

23

Rather, as this Court clearly contemplated when it denied the USDA's <u>previous</u> motion for summary judgment on this basis, defendants were required to identify each withheld portion of a record that has actually been requested  here and to <u>describe why that particular information cannot be disclosed</u>.   <u>See</u> Mem. Op. at 34 (ordering defendants to provide the reasons for nondisclosure and the reasons for nonsegregability); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Johnson</u>, 310 F.3d at 776 ("[i]n order to demonstrate that all reasonably segregable material has been released, <u>the agency must provide a 'detailed justification' for its non-segregability</u>") (emphasis added).

However, instead, in the words of this Court, "defendants provide nothing by which to judge the segregability of the document . . . [w]hile defendants indicate that they did conduct their own segregabilty analysis, <u>they provide no information with which an independent assessment regarding their conclusions can be made</u>".  Mem. Op. at 30 (emphasis added); <u>see</u> <u>also</u>; <u>id.</u> at 2 ("the record provides insufficient evidence upon which the court may review the merits of the putative exemptions and entertain a segregability analysis); <u>id.</u> at 21 (""though the declarants aver within each category that 'they contain no reasonably segregable nonexempt information' and summarize why that may be so, <u>the indices were not created with sufficient detail to permit judicial review of those conclusions</u>") (emphasis added); <u>id.</u> at 32 ("<u>without an adequate means to determine which portions may be segregable, the merits of an exemption cannot be determined</u>") (emphasis added).

Accordingly, the USDA simply may not be granted summary judgment on this record.  In addition, because this Court has already given the agency ample opportunity to make the requisite

24

showing here, and plaintiff's counsel also explained in great detail what was necessary to meet the

segregabilty requirement, in an effort to resolve this case without further litigation, <u>see</u> *supra*; Pl.

Exhs. II, JJ, the agency should not be given yet another opportunity to cure the deficiencies in its

evidentiary showing.  Rather, particularly when this case concerns an investigation that has been

closed now for more than seven years, the time has come to order the agency to disclose all of the

requested information.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the USDA's motion for summary judgment should be denied,

and plaintiff's motion for summary judgment should be granted.

Respectfully submitted,


_____
Katherine A. Meyer
(D.C. Bar No. 244301)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C.  20009
(202)  588-5206

Attorney for Plaintiff

Date:   October 28, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN DEFENSE OF ANIMALS,                    )
                                          )
     Plaintiff,                           )
                                          )
v.                                        )          Civ. No.  02-0557 (RWR)
                                          )
UNITED STATES DEPARTMENT OF               )
     AGRICULTURE,                         )
                                          )
     Defendant.                           )

**<u>ORDER</u>**

Upon consideration of plaintiff's motion for summary judgment, defendant's motion for summary judgment, the oppositions thereto, and the entire record of this proceeding, it is this

day of                              , 2006

ORDERED that plaintiff's motion for summary judgment is granted and it is further

ORDERED that defendant's motion for summary judgment is denied.


_____
United States District Judge