# Meyer & Glitzenstein

1601 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20009-1056

Katherine A. Meyer
Eric R. Glitzenstein
Howard M. Crystal
Kimberly D. Ockene
Tanya M. Sanerib

Telephone (202) 588-5206
Fax (202) 588-5049
meyerglitz@meyerglitz.com

January 27, 2005

**Sent By E-Mail And First Class Mail**

Anne D. Work
Office of Information and Privacy
United States Department of Justice
Flag Building, Suite 570
Washington, D.C. 20530-0001

    Re: In Defense of Animals v. USDA
       Civ. No. 02-0557

Dear Ms. Work:

  The purpose of this letter is to respond to the revised Vaughn index that was provided to plaintiff In Defense of Animals ("IDA"), pursuant to the Court's September 28, 2004 Memorandum Opinion and Order and the parties' subsequent Joint Status Report.

  At the outset, I want to say that we very much appreciate having for the first time an actual list of the records at issue in this Freedom of Information Act ("FOIA") case, with a description of each record that has been withheld. This helps us immensely in attempting to further narrow the areas of dispute. Having said that, we do have several concerns that we would like to address, and we suggest a process for addressing those concerns and perhaps narrowing the number of records, or parts of records, that remain in dispute.

  First, we are puzzled as to why the government continues to treat as records and portions of records that are at issue in this case material that IDA long ago made clear it does not seek, including (a) the names and other identifying information of individuals; (b) protocols and other standard operating procedures; (c) the identity of customers; and (d) the identity of formulas, compounds or other products that were being tested. The list of documents you provided us contains numerous descriptions of such information, with a corresponding exemption asserted for

Plaintiff's Exhibit II

Anne D. Work
January 27, 2005
Page 2

such information – e.g., Exemption 7(C) or Exemption 4. However, since the plaintiff has made clear that it does not seek such information and that, accordingly, such information simply is not at issue in this case, we do not understand why it is included in the new Vaughn index. Indeed, should we have to brief this case again, there would be absolutely no reason for the government to spend any time briefing these exemptions – with respect to the categories of material listed above – nor would the government be entitled to summary judgment on such material. Again, none of this material is at issue in this case. Therefore, it would have made much more sense for the USDA to eliminate such material from the Vaughn index, so that we – and the Court, if necessary – would have a true indication of what records, and portions of records, actually remain at issue.

A second, and clearly related, concern is that the new index still does not address – at all – the segregability issue that was at the heart of Judge Roberts' September 28, 2004 decision. Thus, for example, the USDA is continuing to withhold hundreds of pages of documents on the basis of Exemption 4, when the explanations for those withholdings include descriptions of the withheld material as including information such as protocols, operating procedures, customer names, identities of compounds, etc. However, again, since none of that information is at issue in this case – and therefore can be deleted and withheld here – the agency still has not explained how disclosure of the remainder of the document, e.g. the "results" of the study, or the "observations," or "effects" on the animals, without any information that would identify which client, compound, or product is at issue, would nonetheless still cause the Huntingdon Labs "substantial competitive injury," as required for the government to meet its burden of proof that all of this material is exempt from disclosure under Exemption 4. See, e.g., Judge Roberts' Opinion at 2 ("the record provides insufficient evidence upon which the court may review the merits of the putative exemptions and entertain a segregability analysis"); id. at 30 ("defendants provide nothing by which to judge the segregability of the document" . . . [w]hile defendants indicate that they did conduct their own segregability analysis, they provide no information with which an independent assessment regarding their conclusions can be made"); id. at 31 (emphasis added) ("the index does not adequately correlate the harm to specific portions of the materials within the category of 'Final Test Results' documents"); id. at 32 ("without an adequate means to determine which portions may be segregable, the merits of an exemption cannot be determined"); id. at 34 (ordering the government to produce "the reasons for nondisclosure, and the reasons for nonsegregability") (emphasis added).

Similarly, with respect to Exemption 5, the government has not provided information that would justify its position that no segregable non-exempt information has been withheld. For example, the new Vaughn index still does not explain why the purely factual portions of memoranda that were withheld cannot be disclosed without violating the deliberative process privilege. See Judge Roberts' Decision at 25. It also does not explain why the parts of each such memoranda that clearly do not reveal any advice or recommendations whatsoever - such as the title of the memo, its subject matter, the authors and recipients, etc., cannot be disclosed.

Anne D. Work
January 27, 2005
Page 3

Furthermore, in the case of one document, listed on page 139 of the index (but without a Bates Stamp), there is no indication as to why a document dated May 18, 1998 – more than a month after the USDA settled the administrative case with Huntingdon Labs – may nonetheless be withheld under the "attorney- work product" privilege, since it does not appear that this document was generated "in anticipation of litigation." See Judge Roberts' Memorandum at 26.

In light of the above concerns, and my client's desire to limit the areas of dispute as much as possible without resorting to additional litigation, we propose a meeting of the parties at which someone with knowledge of the documents could answer our questions, particularly regarding segregability, and whether particular documents and portions of documents – especially those concerning the "results" of studies, "observations," "conclusions," "effects," and the like – could be disclosed without revealing information such as the protocol for an experiment, a customer name, a particular compound or formula, etc. – again, all information that simply is not at issue in this case. We believe that if we could have such a meeting with a knowledgeable representative of the government, we could substantially narrow the areas of dispute in this case. However, without such additional information, we will have no choice but to either move for summary judgment on the grounds that the agency still has not met its burden of proof under FOIA, especially with respect to its obligation to disclose all segregable non-exempt information, and/or to ask Judge Roberts to conduct an in camera inspection of a portion of the documents for this purpose, or permit us to take discovery.

We are hopeful that the government will agree that the kind of meeting we are proposing makes the most sense under the circumstances. I have had successful similar meetings in the past (sometimes referred to as "oral" Vaughn indexes) in FOIA litigation, and we believe that this would greatly reduce the amount of information that remains at issue. If you are interested in pursuing this course of action, please let me know as soon as possible, so that we can pick a date and time that is most convenient to the parties. However we decide to proceed, we are required to so advise Judge Roberts by February 11, 2005.

I look forward to your reply.

Sincerely,

Katherine A. Meyer

cc:   Alex Menendez