UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN DEFENSE OF ANIMALS, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | ) | Civil Action No. 02-557 (RWR) |
| Defendant, | ) | |
| and | ) | |
| LIFE SCIENCES RESEARCH, INC., | ) | |
| Intervenor-Defendant. | ) | |

## MEMORANDUM OPINION

This is an action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff In Defense of Animals ("IDA"), an animal rights advocacy group, seeks access to records held by defendant the United States Department of Agriculture ("USDA" or "government" or "agency"). The records concern USDA's investigation of Huntingdon Life Sciences ("Huntingdon")—a research facility licensed to conduct animal experiments on behalf of private clients—for violations of the Animal Welfare Act. Huntingdon is a subsidiary of Life Sciences Research, Inc., ("Life Sciences") which has intervened in this litigation to protect its interest against divulging the investigatory records.

In a previous memorandum opinion and order,[1] Judge Richard Roberts denied, without prejudice, the parties' initial motions for summary judgment insofar as they concerned the validity of the government's claim of exemption from FOIA's disclosure requirements.  He further ordered that the government produce a comprehensive *Vaughn* index[2] to assist the court in adjudicating the exemption claim, after which the parties would be permitted to file renewed summary judgment motions.  Mem. Op. & Order, at 34 (Sept. 28, 2004) [dkt #31].

Thus on August 3, 2005, the government (joined by Life Sciences) filed a new *Vaughn* index, accompanied by a renewed motion for summary judgment.  On October 28, 2005, IDA responded with its own renewed cross-motion for summary judgment.  The case was transferred to this judge on May 18, 2006.

Despite an attempt by the court to resolve the dispute by mediation, *see* Consent to Mediation (Aug. 9, 2006) [dkt #52], the parties have been unable to do so.  For the reasons that follow, an accompanying order will deny all parties' motions for summary judgment.

### BACKGROUND

In 1997, USDA investigated Huntingdon for alleged violations of the Animal Welfare Act.  After the investigation USDA filed an administrative complaint against Huntingdon that charged various violations of the Act and sought civil penalties.  Thereafter, USDA entered into a

---

[1]The court assumes familiarity with the prior opinion, Mem. Op. & Order (Sept. 28, 2004) [dkt #31].

[2]A *Vaughn* index is a detailed affidavit which summarizes the documents withheld by an agency and sets forth why such documents are exempt from disclosure, the purpose of which is to permit adequate adversary testing of the agency's claimed right to an exemption without full disclosure of the documents.  *See Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

settlement with Huntingdon:  The laboratory would pay $50,000 in civil penalties and take

measures to assure compliance with the Act.  In 1999, USDA approved Huntingdon's activities

as being in compliance with the Act and the settlement, and closed the case.  *See* Pl.'s Stmt Of

Material Facts As To Which There Is No Genuine Issue ("Pl.'s Stmt") ¶¶ 1-5 [dkt #18]; Pl. Ex. H

[dkt #18].

　　　　Dissatisfied with the government's resolution of the matter, on November 20, 2000, IDA

submitted a FOIA request to USDA for all records pertaining to the agency's investigation of

Huntingdon.  On April 13, 2001, USDA responded by disclosing the agency's report on

Huntingdon's violations of the Animal Welfare Act, the administrative complaint, and the

settlement agreement.  It also informed IDA that any remaining responsive documents would

have to await processing in the agency's FOIA queue.  *See* Def.'s Stmt Of Material Facts As To

Which There Is No Genuine Issue ("Def.'s Stmt") ¶¶ 1-2 [dkt #13].

　　　　Receiving no further response from USDA for nearly a year, IDA filed this lawsuit.  *See*

Compl. (Mar. 22, 2001) [dkt #1].  USDA then released several hundred pages of redacted and

unredacted documents, and withheld several pages in full, claiming various exemptions under

FOIA.

　　　　USDA also sent well over two thousand pages of responsive documents to Huntingdon to

review for potential exemption from disclosure pursuant to, *inter alia*, FOIA Exemption 4.  That

exemption permits nondisclosure of "trade secrets and commercial or financial information

obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  Upon receiving

Huntingdon's views on the documents, USDA decided to withhold approximately fifteen-

hundred pages of documents in their entireties, in addition to hundreds more redacted pages,

although the number of documents presently at issue has been reduced in the course of this litigation.  *See* Def.'s Stmt ¶¶ 3-4.

Both parties filed initial motions for summary judgment.  On September 28, 2004, Judge Roberts issued a memorandum opinion and order adjudicating the motions.  He held, *inter alia*, that the government had failed to provide sufficient justification or explanation to review the government's claim that it was impossible for the nonexempt and exempt information to be segregated as required under this circuit's law.  *See* Mem. Op. & Order, at 21, 29-30.  Judge Roberts ordered a comprehensive *Vaughn* index, describing "the documents withheld (and to the extent necessary, portions thereof), the reasons for nondisclosure, and the reasons for non-segregability."  *Id.* at 34.  He deferred ruling on the merits of the exemption claims.

On August 3, 2005, the government filed a 182-page *Vaughn* index, attached to a renewed summary judgment motion.  The *Vaughn* index detailed the category of records withheld; a general description of the document; whether the document was withheld in part or in full; the applicable FOIA exemption(s); and a short, specific description of the items exempted.  The index did not include any segregability analysis.  *See Vaughn* Index (Aug. 3, 2005) [dkt #39].

The government supplemented the index with the declaration of Lesia Banks, an assistant director of USDA's FOIA staff.  *See* Banks Decl. ¶ 1 (Aug. 1, 2005) [dkt #39]. She averred that the documents at issue were all subject to FOIA Exemption 4, because the documents reveal either "the design of and methods used in scientific tests conducted by Huntingdon on behalf of its clients," or "information that characterizes the physiological and health effects of proprietary experimental compounds tested by Huntingdon on behalf of its clients."  *Id.* ¶ 3.  Disclosing such

documents, according to Ms. Banks, "would cause Huntingdon substantial competitive harm."
*Id.* As for segregability, the Banks Declaration parrots almost verbatim the first declaration of
the government's other FOIA analyst, Hugh Gilmore, which Judge Roberts earlier found
inadequate for purposes of performing a segregability analysis. *See id.* ¶¶ 3-5.

The Banks Declaration organizes the documents that remain at issue in the litigation,
which the government has further reorganized into the following three categories and several
subcategories[3]:

### Group I
A.   Final Test Reports and Related Records (124 pages withheld in full)
B.   Clinical Observation Raw Data Reports (121 pages withheld in full)
C.   Interim Test Reports (twenty-two pages withheld in full)

### Group II
A.   Necropsy and Postmortem Examination Reports (twenty-three pages withheld in full)
B.   Viability Records (397 pages released in part and fifty-eight pages withheld in full)
C.   Veterinary Treatment Request and Logs (twenty pages released in part and ninety-four page withheld in full),
D.   Observations Sheets (twenty-eight pages withheld in full)
E.   Miscellaneous Records Pertaining to Animal Cages (seven pages released in part)

### Group III
A.   Institutional Animal Care and Use Committee (IACUC) Records (fifty-six pages released in part)
B.   Internal Huntingdon Memoranda (seven pages released in part and thirty-three pages withheld in full)
C.   Internal USDA Investigatory Memoranda (twenty-seven

---

[3]Although the government's organization of the documents differs slightly from that used by Ms. Banks, *compare* Def.'s Supp. Stmt Of Material Facts As To Which There Is No Genuine Issue ("Def.'s Supp. Stmt") ¶2 [dkt #39] *with* Banks Decl. ¶¶ 4-6, the court, following the example of all the parties to this case, will utilize the government's organization.

pages released in part)

In all, some 1,017 pages remain at issue, 503 of which are being withheld in full and the rest

withheld in part pursuant to Exemption 4.[4]  *See* Def.'s Supp. Stmt Of Material Facts As To

Which There Is No Genuine Issue ("Def.'s Supp. Stmt") ¶ 3 [dkt #39].

In response to the government's renewed motion and *Vaughn* index, IDA filed its own

renewed cross-motion for summary judgment, asserting, *inter alia*, that neither the *Vaughn* index

nor the Banks Declaration sufficed to cure the deficiencies articulated in Judge Roberts' original

opinion, in particular the segregability issue.  *See* Pl.'s Renewed Mot. For Summ. J. (Oct. 28,

2005) [dkt #42].

Once the parties had completed filing all responsive papers, Judge Roberts referred the

matter to this judge, *see* Order Referring Motion (May 18, 2006).  A motions hearing was held on

August 9, 2006, at which the court persuaded the parties to attempt to resolve their differences by

mediation.  *See* Consent to Mediation (Aug. 9, 2006) [dkt #52].  That attempt was entirely

unsuccessful.  Following another hearing, the parties filed for the court's review some seventy-

two pages that the government had recently decided to re-release to plaintiff in revised form, *i.e.*,

---

[4]Although plaintiff claims to lack the information to determine whether these records are indeed the only ones at issue, *see* Pl.'s Stmt Of Material Facts As To Which There Is No Genuine Issue & Pl.'s Resp. To Def.'s Supp. Stmt ("Pl.'s Resp.") ¶ 1 [dkt #42], there is no basis, and plaintiff provides none, for doubting the government's presentation of the responsive documents. In any event this court has already held that the government executed a reasonably adequate search to cull all responsive documents.  *See* Mem. Op. & Order, at 10-17, 33.  The court thus finds that the documents remaining at issue consist of the 1,017 pages described *supra*.

Plaintiff also claims that the government failed to discuss the withholding under Exemption 4 of some thirty documents, described in the *Vaughn* index as various communications between Huntingdon, its clients, and/or USDA.  *See* Pl.'s Rep. To Def.'s Opp. To Pl.'s Renewed Mot. For Summ. J., at 15-17 [dkt #46].  The government contends its filings adequately address those documents.  It is unnecessary to resolve this dispute at this time.

with fewer redactions.  *See* Notice of Filing (Nov. 8, 2006) [dkt #55].  The court then ordered, at

the request of plaintiff, that the government produce a sampling of the withheld documents for in

camera review to assist in adjudicating the applicability of Exemption 4 to the full range of

documents.  *See, e.g.*, *Tax Analysts v. IRS*, 294 F.3d 71, 74 (D.C. Cir. 2002).

## DISCUSSION

### I.      Applicable Law

#### A.      The Legal Standard

Summary judgment is granted if there is no genuine issue as to any material fact and if the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The evidence

must be such that a reasonable fact-finder *could not* return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must view the facts and

reasonable inferences thereof "in the light most favorable to the party opposing the summary

judgment motion," *Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007) (brackets omitted).  And "at the

summary judgment stage the judge's function is not himself to weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477

U.S. at 249.

Importantly, "these general standards . . . apply with equal force in the FOIA context."

*Washington Post Co. v. U.S. Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C. Cir.

1989).  "If a genuine dispute does exist over a material issue, then parties should be given the

opportunity to present direct evidence and cross-examine the evidence of their opponents in an

adversarial setting."  *Id.*

#### B.      FOIA Exemption 4

Under FOIA, an agency has the burden to demonstrate that withheld documents are exempt from disclosure, which it may meet by submitting "affidavits [that] show, with reasonable specificity, why the documents fall within the exemption.  The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."  *See Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting *Hayden v. National Security Agency/Central Security Service*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).  A *Vaughn* index is a specialized affidavit of which the purpose is to meet the agency's burden under FOIA without actually having to disclose the documents.  *See supra* n.2; *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006).

FOIA directs this court to review de novo the applicability of the exemption.  5 U.S.C. § 552(a)(4)(B).  In rendering its judgment, a court may, at its discretion, "examine the contents of [disputed] records in camera to determine whether such records or any part thereof shall be withheld under any of the [FOIA] exemptions."  *Id.*; *see Quinon*, 86 F.3d at 1227.

At issue in this case is Exemption 4 of FOIA, which permits nondisclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  The parties agree that plaintiff does not seek access to any trade secrets and that the information at issue is "commercial" and "obtained from a person" for purposes of the exemption.  *See* Def.'s  Mem. Of Points & Authorities In Support Of Def.'s Renewed Mot. For Summ. J. ("Def.'s Mem."), at 4 (Aug. 3, 2005) [dkt #39]; Mem. Op. & Order, at 28.

The parties contest, however, whether the information is "privileged and confidential."  In this circuit information is privileged and confidential for purposes of Exemption 4 if disclosure

would either impair the agency's ability to obtain similar information in the future or likely "cause substantial competitive harm to the entity that submitted the information." *See Judicial Watch*, 449 F.3d at 148.  The "substantial competitive harm" standard is applicable to cases where, as here, the government compelled the entity to submit the contested information.  *See Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc).  The government does not argue that disclosure of Huntingdon's documents would result in impairing its ability to retain the cooperation of other entities in future investigations; but it does maintain that disclosure would likely cause Huntingdon substantial competitive harm.

## II.    Analysis

In response to a prior order that the government provide *reasons* for its claim that most of the exempt information was not reasonably segregable from the documents, the government provided a *Vaughn* index that fails to even mention segregability and a declaration by one of its FOIA staff that is identical—almost to the word—to an earlier declaration that this court previously had found deficient, at least insofar as concerns segregability.  *See* Mem. Op. & Order, at 21–22.  Moreover, in camera review of a sampling of the documents—which was undertaken at the request of *plaintiff*—has done little to instill confidence in the government's claim of exemption for most of the contested information.

Nevertheless, the parties have a genuine dispute over a material fact:  whether disclosure of the categories of information in the context of the documents sought by IDA would permit Huntingdon's competitors to derive or reverse engineer Huntingdon's proprietary information, thereby causing it substantial competitive harm.  Accordingly, summary judgment is

inappropriate.

Plaintiff does not dispute that revelation of certain proprietary information might well cause substantial competitive harm to Huntingdon.  Plaintiff  contends, however, that with appropriate redactions the documents would be utterly useless to competitors.  For example, "plaintiff has long contended that the USDA simply cannot meet its burden of proof that all of the information that has been withheld is nevertheless exempt from disclosure under Exemption 4, since it would be extremely difficult, if not impossible, for any competitor of Huntingdon's to successfully use the bare results of tests, [sic] and observations of animals *without knowing the product being tested or the company for which it was being tested*."  Pl.'s Mem. In Support Of Its Cross-Mot. For Summ. J., at 3-4 (emphasis in original).  Plaintiff has argued further that "disclosure of the actual result of a particular research experiment" would cause little or no harm to Huntingdon's business "if the agency deletes from the document any information that identifies the test protocol, the substance being tested, or the name of Huntingdon's client."  *See id.* at 4.

Life Sciences vigorously disputes this contention.  The general manager of Huntingdon has averred that "Huntingdon's detailed study designs could easily be derived from the study reports, the raw data and other documentation reflecting their execution on a product within a particular therapeutic class, regardless of whether or not actual testing protocols or the identity of the product tested is available."  Caulfield Decl. ¶ 32(s) (Mar. 19, 2003) [dkt #21].  For instance, "information about the type of compound a competitor is testing, and the stage to which the testing has evolved, is used by pharmaceutical companies in the industries Huntingdon serves to make decisions about whether or not to enter or continue to conduct research in a given area,

how fast to proceed, and how much to invest." *Id.* ¶ 32(t).  And often "small bits of information," such as the kind of animal being tested and the evaluations of the results, "reveal valuable trade secrets to competitors, including insight into the therapeutic class to which a drug candidate belongs." *Id.* ¶ 32(u).

These direct contradictions preclude summary judgment which would end this interminable litigation.  *See Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999).  Two cases from this circuit, *Niagra Mohawk*, *id.* at 18-19, and *Washington Post*, 865 F.3d at 325-26, are instructive and, in all likelihood, controlling.  In both cases, the court of appeals held that denial of summary judgment was appropriate because a genuine issue of material fact existed as to the applicability of FOIA Exemption 4.

In the *Washington Post* case, the dispute centered on the factual issue whether the government's ability to gather information from future private entities would be impaired by releasing the information.  There the court acknowledged that the "inherently speculative" nature of the issue rendered the factual question "rarely susceptible to definitive proof." *Id.* at 326. Nevertheless, "'factual' issues that involve predictive facts almost always require a court to survey the available evidence, to credit certain pieces of evidence above others, and to draw cumulative inferences until it reaches a judgmental conclusion. . . .  In such an inquiry, the ultimate 'facts' in dispute are most successfully approached *when all relevant underpinnings are fully developed*," not at the summary judgment stage. *Id.* (emphasis added).  Similarly, here the ultimate question is whether disclosure of information concerning the results of Huntingdon's research would *likely* reveal proprietary information to competitors, despite appropriate redactions, and cause the company substantial competitive harm.  That hotly contested issue

-11-

cannot be resolved by a summary judgment.

The *Niagra Mohawk* case is even more on point.  There the court of appeals also encountered contradicting assertions by the parties on the issue of impairment, and, like the *Washington Post* panel, held that summary judgment was improper.  *Niagra Mohawk*, 169 F.3d at 18.  But it also found summary judgment improper because of a second sharp dispute on the very issue now before this court:  whether disclosure would create a likelihood of substantial competitive harm.  *Id.*  The factual point of contest was whether the private entity actually faced business competition, *see National Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 679 (D.C. Cir. 1976); and because the parties' views contradicted each other, the appellate court held that summary judgment should not have been granted—even where one of the parties' assertions "seem[ed] unlikely."  *Niagra Mohawk*, 169 F.3d at 19.  Here the specific issue is whether the disputed documents containing laboratory results and other pertinent information would serve as blueprints from which competitors of Huntingdon could reverse engineer valuable proprietary information exempt from disclosure.  *See* Caulfield Decl. ¶ 32(s).  Although the contention seems doubtful on the basis of the evidence before the court, the dispute is genuine and factual for which summary judgment is improper.

Finally, a comment.  Although the law precludes summary judgment in this case, that does not mean that the court is, or should be, blind to the voluminous material submitted and reviewed.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott*, 127 S. Ct. at 1776.  While defendants' view of the facts does not rise to the level of  "blatantly"

-12-

contradicting the record, it comes mighty close.  Review in camera of a sampling of the disputed documents convinces that much, if not all, of the redacted and withheld documents will not likely survive the scrutiny of a trial, particularly under de novo FOIA review.  Moreover, the seventy-two pages that the government has recently decided to re-release to plaintiff with fewer redactions than it previously claimed under Exemption 4 is amply suggestive of the extraordinarily broad and far-reaching view the government takes of the exemption.  *See* Notice of Filing (Nov. 8, 2006) [dkt #55].  A trial on the merits would be greatly facilitated by expert testimony on the ability of competitors to reverse engineer proprietary information from the disputed documents, as well as the likelihood of effective advantage to a competitor from the redacted data.  With this in mind, the parties, and especially the government and Life Sciences, are admonished to attempt to arrive at a settlement.

## CONCLUSION

For the foregoing reasons, an accompanying order will deny the pending motion and cross-motion for summary judgment and direct the parties to submit a joint status report scheduling further proceedings to bring this litigation to end.


/s/

Louis F. Oberdorfer
UNITED STATES DISTRICT JUDGE


Dated:  August 14, 2007