**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____    )
                                   )
IN DEFENSE OF ANIMALS,             )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )        Civil Action No. 02-557 (RWR)
                                   )
UNITED STATES DEPARTMENT           )
OF AGRICULTURE, <u>et. al.</u>,            )
                                   )
        Defendants.                )
_____    )

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff In Defense of Animals ("IDA"), an animal rights advocacy group, brings this action under the Freedom of Information Act ("FOIA") against defendant United States Department of Agriculture ("USDA"), seeking access to records withheld under FOIA Exemption 4.  IDA has filed two motions in limine to exclude at trial the proposed expert testimony of Ricardo Solano, Jr. and several trial exhibits offered by the USDA and intervenor-defendant Life Sciences Research, Inc. ("LSR").  Because Solano's proposed testimony and related exhibits are not probative of any material issue in dispute, IDA's motions in limine to exclude Solano's testimony and related exhibits will be granted.  Because the declarations of Hugh Gilmore and Michael Caulfield as freestanding exhibits are inadmissible hearsay, IDA's motion in limine to exclude them will be granted.

-2-

## BACKGROUND

A more detailed history of this case is available in an earlier opinion, In Defense of Animals v. USDA, 501 F. Supp. 2d 1 (D.D.C. 2007).  IDA brings this FOIA action seeking documents from the USDA concerning the USDA's investigation of Huntingdon Life Sciences ("HLS"), a subsidiary of LSR, for violations of the Animal Welfare Act.  LSR intervened as a defendant to protect its interest in the documents at issue which currently number 1,017 pages, 503 of which are being withheld in full and the rest withheld in part.  Id. at 4.  The government has withheld these documents under FOIA Exemption 4, which prevents disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]"  5 U.S.C. § 552(b)(4).  Earlier, the parties' cross-motions for summary judgment were denied because there is a disputed material fact as to whether disclosure of the withheld documents would cause HLS substantial competitive harm.  In Def. of Animals, 501 F. Supp. 2d at 8.  In anticipation of trial on this issue, IDA has filed two motions in limine to exclude the proposed expert testimony of Ricardo Solano, Jr. and several of defendants' proposed trial exhibits.

## DISCUSSION

FOIA Exemption 4 prevents disclosure of "trade secrets and commercial or financial information obtained from a person and

-3-

privileged or confidential[.]"  5 U.S.C. § 552(b)(4).  The
parties have previously agreed that trade secret protection does
not apply in this case and that the information withheld under
Exemption 4 is "commercial" and "obtained from a person."  In
Def. of Animals, 501 F. Supp. 2d at 6.  Accordingly, the
remaining question is whether the withheld commercial information
is "confidential."[1]

In the District of Columbia Circuit, commercial information
is "confidential" under Exemption 4 if "disclosure would either
'(1) . . . impair the Government's ability to obtain necessary
information in the future; or (2) . . . cause substantial harm to
the competitive position of the person from whom it was
obtained.'"  Pub. Citizen Health Research Group v. FDA, 704 F.2d
1280, 1290-91 (D.C. Cir. 1983) (alteration in original) (quoting
Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770
(D.C. Cir. 1974) (footnote omitted)).  Because the information
withheld under Exemption 4 was submitted involuntarily to the
USDA, the USDA does not contend that disclosure would impair its
ability to obtain necessary information in the future.  See In
Def. of Animals, 501 F. Supp. 2d at 6.  (Def.'s Mem. at 6-7.)
Thus, the critical issue for trial is whether disclosure of the

_____

[1]The government does not contend such information is
"privileged."  (See Def.'s Renewed Mot. for Summ. J. at 4.)

-4-

withheld information would cause substantial competitive harm to
HLS.

FOIA exemptions "must be narrowly construed" and "the burden
is on the agency to sustain its action." John Doe Agency v. John
Doe Corp., 493 U.S. 146, 152 (1989) (internal quotation marks
omitted).  While "the court need not conduct a sophisticated
economic analysis of the likely effects of disclosure,
[c]onclusory and generalized allegations of substantial
competitive harm . . . cannot support an agency's decision to
withhold requested documents." Pub. Citizen Health Research
Group, 704 F.2d at 1291 (internal citation omitted).  The agency
need not prove "actual competitive harm" but must show (1) actual
competition and (2) the "likelihood of substantial competitive
injury." Id.  The type of competitive injury covered under
Exemption 4 is limited to "that which may flow from competitors'
use of the released information, not from any use made by the
public at large or customers." Ctr. to Prevent Handgun Violence
v. U.S. Dep't of the Treasury, 981 F. Supp. 20, 23 (D.D.C. 1997)
(emphasis in original) (rejecting the Bureau of Alcohol, Tobacco,
and Firearms' argument that releasing reports would subject
licensed gun dealers to "unwarranted criticism and harassment" as
irrelevant to the competitive harm analysis); see Worthington
Compressors, Inc. v. Costle, 662 F.2d 45, 51-52 (D.C. Cir. 1981)
(inquiring "whether release of the requested information, given

-5-

its commercial value to competitors and the cost of acquiring it

through other means," will create a "windfall for competitors"

that puts the disclosing entity at a commercial disadvantage).

Further, the court of appeals has

> emphasize[d] that "[t]he important point for
> competitive harm in the FOIA context . . . is that it
> be limited to harm flowing from the affirmative use of
> proprietary information by competitors.  Competitive
> harm should not be taken to mean simply any injury to
> competitive position, as might flow from customer or
> employee disgruntlement or from the embarrassing
> publicity attendant upon public revelations concerning,
> for example, illegal or unethical payments to
> government officials or violations of civil rights,
> environmental or safety laws."

Pub. Citizen Health Research Group, 704 F.2d at 1291 n.30

(quoting Mark Q. Connelly, Secrets and Smokescreens: A Legal and

Economic Analysis of Government Disclosures of Business Data,

1981 Wis. L. Rev. 207, 235-36 (emphasis and alteration in

original)).  For example, the court of appeals has rejected a

party's claim of reputational harm flowing from the release of

information that would reveal that the corporation bribed a

foreign government as "simply irrelevant" to the competitive harm

inquiry.  See Occidental Petroleum Corp. v. SEC, 873 F.2d 325,

341 (D.C. Cir. 1989) (stating that the agency's role was "not to

assess the overall damage, regardless of its nature, . . . but

rather to determine whether any non-public information contained

in those documents [was] competitively sensitive" (emphasis in

original)).

-6-

I.   EXPERT TESTIMONY OF RICARDO SOLANO, JR.

LSR proposes to offer the testimony of Ricardo Solano, Jr. as an expert on "the tactics of animal rights organizations -- including their efforts to enlist, direct, and incite animal rights activists to engage in any activity meant to harm the business of HLS in any manner available."  (LSR's Opp'n to Pl.'s Mot. to Exclude Test. at 2 (internal quotation omitted).)  Under Federal Rule of Evidence 702, an expert witness may testify if his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702. Rule 702 requires that expert testimony be both reliable and "relevant to the task at hand."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993).  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Thus, expert testimony must be excluded as irrelevant "if it has no bearing on any issue in the case[.]"  Keys v. Wash. Metro. Area Transit Auth., Civil Action No. 01-2619 (RJL), 2008 WL 4279495, at *2 (D.D.C. Sept. 18, 2008) (citing Halcomb v. Wash. Metro. Area Transit Auth., 526 F. Supp. 2d 24, 31 (D.D.C. 2007)).

As is recounted above, the only issue for trial is whether the information withheld by the USDA, if released, would cause

-7-

competitive harm to HLS.  Because competitive harm is narrowly
limited to the harm arising from a competitor's use of the
information for a commercial advantage, Solano's proposed
testimony is irrelevant.  The animal rights organizations in
which Solano claims expertise are not commercial competitors.
While the tactics he describes in his expert report may cause
harm to HLS, it is not harm caused by commercially competitive
behavior.  Rather, the harm Mr. Solano describes is akin to the
reputational harm caused by negative publicity that the court of
appeals has made clear is irrelevant to the competitive harm
inquiry under Exemption 4.  See Occidental Petroleum Corp., 873
F.2d at 341; Pub. Citizen Health Research Group, 704 F.2d at 1291
n.30.  Thus, under Daubert, Solano's testimony will be excluded
as irrelevant.

II.  TRIAL EXHIBITS

    IDA moves to exclude the following exhibits on the grounds
that they are (1) inadmissible hearsay and (2) irrelevant because
they focus on the tactics of animal rights groups:

| Ex. No. | Description |
|---|---|
| 10.A | Chris Mondies, A Harsh Animal Rights Campaign Targets N.J. Firm, Workers, The Philadelphia Inquirer, July 14, 2002. |
| 10.B | IDA, Pamphlet, Huntingdon Life Sciences Animal Killers! Close Them Down! |
| 10.C | Maria Burke, Animal Rights Extremism, A UK Export?, BioPeople 36-41 (Summer 2001). |

-8-

| 10.D | Al Baker, <u>Environmental Groups Claim to Have Vandalized Banks</u>, N.Y. Times, June 14, 2001. |
| --- | --- |
| 10.E | IDA, Notes from the Field, Week of July 19, 2000 (website printout) |
| 10.G | <u>Stephens Group, Inc. et al. v. Voices for Animals et al.</u>, Civil Action No. 00:5518, Stipulated Permanent Injunction and Order (2001). |
| 10.H | Bill Burke, <u>Terrorism Accusations Raise Hackles at PETA</u>, The Virginian-Pilot, June 22, 2002. |
| 10.L | Letter from Elliot M. Katz, President of IDA. |
| 10.M | IDA Website Screenshot (site last updated Mar. 12, 2003). |
| 10.O | IDA Website, Huntingdon Life Sciences: Running for Its Life |
| 10.P | Marc Davis, <u>Judge Criticizes PETA's Methods, Bars Group from Using Undercover Tapes</u>, The Virginian-Pilot, July 30, 1997. |
| 10.Q | John-Henry Doucette, <u>Latest Undercover Probe Renews Attacks on PETA's Methods</u>, The Virginian-Pilot, June 16, 1997. |
| 10.S | Stop Huntingdon Animal Cruelty Website, HLS & Covance Infiltrated, http://www.shac.net/TARGETS/customers/infiltration/infiltratedfrontpage.html (printout date Mar. 18, 2003). |

(<u>See</u> Pl.'s Mot. to Exclude Tr. Exs. at 3-7.)  "Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  From a review of each of the proposed exhibits, it is clear that they focus exclusively on the actions of animal rights groups who do not compete commercially with HLS.  For the reasons discussed above, they are irrelevant to the issue of competitive harm under Exemption 4 and will be excluded under Rule 402.

-9-

III. DECLARATIONS OF HUGH GILMORE AND MICHAEL CAULFIELD

     IDA objects to use at trial of the Second Declaration of
Hugh Gilmore (Ex. 9) and Declaration of Michael Caulfield (Ex.
10.T) on the grounds that such declarations are inadmissible
hearsay and "include[] impermissible lay opinions that are not
based on [the declarant's] personal knowledge."  (Pl.'s Mot. to
Exclude Tr. Exs. at 3, 7-8 (citing Fed. R. Evid. 701, 801, 802).)
On their face, these declarations are inadmissible hearsay
because they are out-of-court statements by declarants offered
for the truth of the matter asserted.  <u>See</u> Fed. R. Evid. 801,
802.  Defendants have made no showing that either declaration is
nonhearsay or that either declaration falls within one of the
hearsay exceptions under Rule 803 or the residual exception to
the rule against hearsay under Rule 807.  Nor have defendants
proffered any other basis for the admission of the declarations.
Accordingly, IDA's motion to exclude the declarations of Gilmore
and Caulfield as freestanding, unsponsored exhibits will be
granted.

CONCLUSION AND ORDER

     Because the proposed expert testimony of Ricardo Solano, Jr.
and defendants' proposed exhibits 10.A-E, G, H, L, M, O-Q, and S
focus exclusively on the tactics of animal rights organizations,
which are not HLS's commercial competitors, the proposed
testimony and exhibits will be excluded as irrelevant under Rule

-10-

402.  Further, because the declarations of Gilmore and Caulfield
are hearsay and the defendants have made no showing that the
declarations are otherwise admissible as freestanding,
unsponsored exhibits, these declarations will be excluded.
Accordingly, it is hereby

ORDERED that IDA's motion [80] to exclude the testimony of
Ricardo Solano, Jr. be, and hereby is, GRANTED.  It is further

ORDERED that IDA's motion [88] to exclude defendants'
proposed trial exhibits be, and hereby is, GRANTED.  Defendants'
proposed exhibits 10.A-E, G, H, L, M, O-Q, and S, and the
declarations of Gilmore and Caulfield are excluded.

SIGNED this 21st day of November, 2008.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge